[McCormick & Richardson v. Joseph & Anderson.]

# McCormick & Richardson *v.* Joseph & Anderson.

*Statutory Claim Suit, between Vendor and Sub-Purchaser.*

1. *Fraud by purchaser, in buying goods ; rights of seller.*—Where goods are obtained on credit by an insolvent purchaser, with no intention or reasonable expectation of paying for them, and without disclosing to the seller his financial *status*, the fraud vitiates the sale, and the seller may recover the goods, except from a sub-purchaser for valuable consideration without notice.

2. *To what witness may testify.*—The seller of the goods, testifying as a witness for himself, in a controversy with a sub-purchaser, can not be allowed to state that "he believed the purchaser to be solvent, and would not have sold the goods if he had known of his insolvency."

3. *Same ; general reputation.*—The seller's ignorance of the purchaser's insolvency is competent evidence for him, on an issue involving his right to reclaim the goods on the ground of fraud, as his knowledge of that fact would be competent evidence against him ; yet he can not be allowed to state, while testifying as a witness, that "from general report he understood" that the purchaser was solvent.

4. *When title passes to purchaser of goods ; delivery to common carrier.* When a purchaser of goods, having previously ordered them, requests the seller to deliver them to some specified carrier for him, a delivery to that carrier is equivalent to a delivery to the purchaser himself ; but, when the seller, on delivering the goods to a carrier for transportation, takes the bill of lading in his own name, the title is retained in himself, and does not pass without an assignment of the bill of lading.

5. *Same ; assignment and delivery of bill of lading, or deposit in mail.*—If the seller takes the bill of lading in his own name, and afterwards transfers and delivers it to the purchaser, the title to the goods thereby passes to and vests in the purchaser ; and if he deposits it in the mail, assigned and directed to the purchaser, the delivery takes effect from that day, notwithstanding the miscarriage and loss of the paper ; nor is a duplicate necessary to perfect the title of the purchaser in such case.

6. *Proof of purchaser's insolvency ; subsequent admissions or declarations.*—The insolvency of the purchaser, at the time the contract was made, can not be proved by his admissions or declarations made subsequently to a transfer of the goods ; and his sworn answer to a bill in chancery, to which the transferree or claimant was not a party, is, as to the latter, *res inter alios*, and not competent evidence.

7. *Proof of insolvency.*—Insolvency to-day does not, generally, prove insolvency a week or ten days before ; but it is a fact to which the jury may look, in connection with other facts (such as the disparity between the debtor's assets and his liabilities), in determining whether the insolvency did not exist at the former day.

APPEAL from the Circuit Court of Barbour.

Tried before the Hon. H. C. SPEAKE.

The appellees in this case, wholesale dealers and manufacturers of flour in the city of Montgomery, instituted a statutory

action of detinue on the 14th of October, 1884, against Benjamin J. Chitty, to recover forty-one barrels of flour, which they had sold to one L. Manasses, a retail merchant doing business at Clayton. The flour was claimed by several persons; McCormick & Richardson, the appellants in this case, claiming eleven barrels, making affidavit, and giving bond for the trial of the right of property. On the trial of the claim suit, as appears from a bill of exceptions reserved by the claimants, Joseph, one of the plaintiffs, testified that, "on the 23d September, 1884, or a short time previous, plaintiffs received an order by mail from said L. Manasses for a car-load of flour; that the letter contained no statement as to his financial condition, but was simply an order for a car-load of flour, of the kind he had been principally purchasing from them; that on said 23d September, 1884, in accordance with said order, he placed eighty-five barrels of flour on the cars at Montgomery, to be shipped to Clayton, on a credit; that the flour was shipped to plaintiffs' own order, and an indorsed bill of lading was that day mailed to said L. Manasses; that the flour was shipped to their own order, for the purpose of getting for Manasses' benefit the reduced rate of freight over the railroad, which, as they understood, was given to manufacturers, but not to retail dealers." This bill of lading was not received by Manasses, and another was mailed to him by plaintiffs on the 1st October. Said Joseph further testified, "that Manasses had been dealing with plaintiffs' house for years, and had met his bills promptly; that his *understanding* as to the financial condition of said Manasses, at all times during this transaction, was that he was solvent; that Manasses never informed them of his condition, nor had they inquired of him, or otherwise, as to his solvency, but that *from general report they understood him to be solvent.* The claimants objected to the witness stating his understanding, and also to his stating that they understood from general report that said Manasses was solvent;" and they duly excepted to the overruling of their objection. Said witness having further stated, on cross-examination, "that they sold the flour to said Manasses on faith of the credit he had established with them by his previous transactions, together with their belief that he was solvent;" the court allowed him to state, on re-examination in rebuttal, "that he sold the flour to said Manasses because he believed him to be solvent, and would not have sold if he had known of such insolvency;" and to the admission of this evidence an exception was reserved by the claimants. The plaintiffs introduced, also, "evidence tending to show that said Manasses was insolvent at the date he ordered said flour, and at the time he received it; and for the purpose of showing his insolvency at the date of the purchase,

and at the receipt of the flour, read in evidence his sworn answer to a bill in equity in the United States Circuit Court at Montgomery, in which he admitted his insolvency for years past." The claimants duly objected and excepted to the admission of this answer as evidence.

The court charged the jury, *ex mero motu,* "that the shipping of the flour by plaintiffs to their own order kept and reserved the title in them, and Manasses' right to the possession of the flour and his title therein did not accrue until he got possession of the indorsed bill of lading; and if the evidence satisfied the jury that at time [?] Manasses had no intention or reasonable expectation of paying for the flour, they must find for the plaintiffs." The claimants excepted to this charge, and requested the following charges: (1.) "The purchase of the flour was complete, when the buyer and the seller agreed upon the sale; and although the goods may have been shipped to the order of the seller, as testified, for the purpose of getting reduced rates, yet they belonged to Manasses, and passed title to him, so far as determining when the purchase was made." (2.) "The fraud alleged must be shown to have been committed at the time the goods were purchased; that is, if Manasses had a fraudulent intent which would avoid the sale, that intent must have existed at the time the seller and purchaser agreed to the sale." (4.) "The fact that Manasses was insolvent on the 1st, 2d, or 3d day of October, does not prove that he was insolvent on the 23d September previously." The court refused each of these charges, and the claimants excepted to their refusal.

The several rulings of the court on the evidence, the charge given, and the refusal of the several charges asked, are now assigned as error.

J. M. WHITE, for the appellants.—(1.) The court erred in admitting the testimony of Joseph which was objected to. *Wilson v. State,* 73 Ala. 527; *Peak v. Stout,* 8 Ala. 647; *Whizenant v. State,* 71 Ala. 383; *Brewer v. Watson,* 71 Ala. 299. (2.) The answer of Manasses to the bill in chancery was not competent evidence against the claimants, being *res inter alios acta* as to them.—*Armstrong v. Harper,* 65 Ala. 523; *Horton v. Smith,* 8 Ala. 73. (3.) The title to the goods passed to the purchaser, at least, when the indorsed bill of lading was deposited in the mail; and the plaintiffs could not avoid the sale, unless there was a fraudulent intent on the part of the purchaser at the time the contract was consummated.—*Flash Brothers v. Loeb & Brother,* 65 Ala. 527; *Pilgreen v. The State,* 71 Ala. 368; 1 Parsons on Contracts, 6th ed., 525 ; Benjamin on Sales, 3d Amer. ed., § 181.

[McCormick & Richardson v. Joseph & Anderson.]

E. P. MORRISSETT, *contra.*—The plaintiffs' right of action is founded on the fraud practiced on them by Manasses, and is supported by the case of *Flash Brothers v. Loeb & Brother,* 65 Ala. 527, and the authorities therein cited. The claimants do not set up any purchase by them for valuable consideration without notice, but stand only on the title of Manasses himself; and any evidence which would be good as against him, is equally admissible against them.—Greenl. Ev. §§ 178, 180, 189. That the answer of Manasses to the bill in chancery was competent evidence against him, can not be doubted.—*Hallett & Walker v. O'Brien,* 1 Ala. 585; *Callan v. McDaniel,* 72 Ala. 103; *McLemore v. Nuckolls,* 37 Ala. 662. The charges given by the court were correct.—*Devoe v. Brandt,* 53 N. Y.; *Loeb & Brother v. Flash Brothers,* 65 Ala. 527; 42 Amer. Rep. 53, and cases cited; Benjamin on Sales, §§ 443–4, and notes; *Fulton Insurance Co. v. Goodman,* 32 Ala. 108. The first charge asked was properly refused, because it assumes that the flour belonged to Manasses as soon as it was shipped, when there was no evidence as to the terms of the sale. The second charge asked confined the question of fraud to the time when the goods were ordered, and withdrew from the consideration of the jury the evidence of fraud in his taking possession of the goods at the depot.—*Reese v. Beck,* 24 Ala. 652; *Edgar v. McArn,* 22 Ala. 813; *Upson v. Raiford,* 29 Ala. 188; *Savery v. Moore,* 71 Ala. 237. The last charge asked was calculated to mislead the jury, unless qualified or explained, and was, for that reason, properly refused.—1 Brick. Dig. 339, §§ 59–65.

SOMERVILLE, J.—The action is one of detinue, instituted by the appellees, against one Chitty, to recover certain barrels of flour; the appellants intervening, under the statute, as claimants of a portion of the property sued for, which appears to be eleven barrels. The whole case resolves itself into one of an alleged fraudulent purchase of the goods from appellees, Joseph & Anderson, by one Manasses, upon whose title the claimants stand, without any pretence of being purchasers for value, without notice. The plaintiffs base their right of recovery upon the theory, that Manasses was insolvent at the time he made the purchase, and obtained the goods on credit, with no intention or reasonable expectation of paying for them, and without disclosing to the appellees the *status* of his financial condition. It is not contended, if these facts are true, that the plaintiffs can not successfully maintain a recovery, under the authority of *Loeb & Bro. v. Flash Bros.,* 65 Ala. 526, 538.

2. The judgment of the Circuit Court must be reversed, for one or more erroneous rulings. It was error to allow the witness Joseph, who was one of the plaintiffs, to testify that he

[McCormick & Richardson v. Joseph & Anderson.]

sold the flour to the purchaser because he *believed* him to be
solvent, and that " he would not have sold had he known of
such insolvency." Matters of fact, rather than mere belief,
were proper subjects of testimony to be elicited from the wit-
ness; and the issue for investigation involved what the witness
had actually done, rather than what he might have done under
a certain state of facts. It is well settled in this State, what-
ever the rule may be elsewhere, that witnesses are not per-
mitted to testify to their motive, belief, or intention, when
secret and uncommunicated; such mental *status*, when relevant,
being a matter of inference to be determined from the circum-
stances of the case by the jury.— *Wheless v. Rhodes*, 70 Ala.
419 ; *Whizenant v. The State*, 71 Ala. 383 ; *Burke v. The State*,
71 Ala. 377 ; *Brewer v. Watson*, *Ib.* 299.

3. It was competent to prove the plaintiffs' ignorance or
knowledge of the failing circumstances or insolvent condition
of Manasses at the time he made the purchase of the flour. It
was error, however, to allow Joseph to state that his firm
"understood" him to be solvent "from general report." The
evidence does not fall within the rule, that when a fact is shown
once to exist, it is competent to prove a general reputation, or
common report of its existence, in the business community
where the party in question resided, in order to impute a prob-
able knowledge of such fact to such party.—*Humes v. O'Bryan*,
74 Ala. 64, 81; *Stallings v. The State*, 33 Ala. 425; 1 Whart.
Ev. § 252. There is no evidence tending to show that Manas-
ses was ever financially solvent, other than the alleged rumors.
Rumors of a false report are not admissible to prove one's
ignorance of the truth.

4. The chief point of inquiry is, when was the sale of the
flour complete, so as to pass the title to the purchaser. In our
opinion, the facts in evidence show, *prima facie*, that there was
a constructive delivery on the twenty-third day of September,
1884,—when the indorsed bill of lading was put in the mail,
directed to Manasses at Clayton. The delivery of the goods to
the common carrier, it is true, was not, in this case, a delivery
to the consignee. This principle applies in cases where the
buyer, having previously ordered the goods, requests the seller
to deliver them to some particular carrier, who is thus con-
stituted the agent of the consignee to receive them. *Pilgreen
v. The State*, 71 Ala. 368, was a case of this character. Here,
the bill of lading, taken from the railroad company by the ship-
pers, was made out to their order ; and this operated very clearly
to retain the title in themselves, by indicating an intention that
it should not pass to the consignee without an assignment of
this "document of title," as it is often denominated. The in-
dorsement and delivery of the bill of lading, however, in the

[McCormick & Richardson v. Joseph & Anderson.]

absence of all fraud, would vest the right of property and ownership of the merchandise comprised in its terms in the indorsee, and, where such indorsee is a purchaser, would complete the sale from the moment of the delivery of such muniment of title.—3 Add. Contr. § 1291; *Farmers' National Bank v. Logan*, 74 N. Y. 568; Anson on Contr. 216.* The delivery of the bill of lading, thus indorsed or assigned, would operate as a constructive delivery of the goods, upon a principle analogous to that which often makes the indorsement and delivery of a warehouse-receipt evidence the symbolic delivery of property. *Allen v. Maury & Co.*, 66 Ala. 10.

5. The question, then, depends upon when the bill of lading itself must be regarded as delivered. It has been held, that the putting of a deed in the post-office, addressed to the grantee, was a sufficient constructive delivery.—2 Greenl. Ev. § 297; *McKinney v. Rhodes*, 5 Watts, 343. The reason is, that by such act the grantee shows an intention to part with his entire control, or dominion over the instrument, and the acceptance of the grantee is presumed, even in the absence of positive proof, because it confers a benefit or bounty upon him.—*Ex parte Powell*, 73 Ala. 517; *Alexander v. Alexander*, 71 Ala. 295. The mailing of the bill of lading, properly indorsed, and directed to the consignee, was presumptively a parting with the control and dominion over it; the mail-carrier, as it is commonly understood in this country and in England, being the agent of the consignee to receive, rather than of the consignor to transmit mail-matter, in all such cases. In *Hatchett v. Molton*, decided at the present term (76 Ala. 410), where a written contract was deposited in the mail by the promisor, addressed to the promisee, and was afterwards received, it was held to have been a binding contract upon the parties from the day of its delivery in the mail. In *Buffinton v. Curtis*, 15 Mass. 528, it was said by Parker, C. J., that a bill of lading, indorsed, and put in the post-office, addressed to the indorsee, was a constructive delivery, and from that time passed the property in the goods. In the present case, the first bill of lading, which was mailed to Manasses on the twenty-third of September, 1884, miscarried, and was never received by him. In our opinion, this was unimportant. The transaction does not need any aid from the presumption of his assent to it, for this is expressly proved. The delivery of the instrument was complete from the time of its deposit in the mail, and this operated as a constructive delivery of the goods in controversy. To accomplish this end, the second, or duplicate copy, was not required. The consignee could have brought his action against the carrier, and have recovered without it, on proving the loss of the original in the

16

mails.   The rulings of the court were in conflict with this phase of the case, and were erroneous.

6.   The insolvency of Manasses could not be proved by any declarations or admissions by him, so far subsequent to any transfer of the goods to the claimants as to constitute no part of the *res gestœ* of the transaction.   The sworn answer of Manasses in the chancery suit, shown to have been pending in the United States Court, at Montgomery, was a mere admission of such insolvency, and would be *res inter alios acta*, so far as concerns the appellants, if made subsequent to his parting with the title to the property.

7.   The court properly refused the fourth charge requested by the appellants, because it tended to mislead the jury.   It is true, perhaps, that evidence of one's insolvency to-day can not be said, generally, to prove his insolvency a week, or ten days ago ; but it is a fact to which the jury may look, and from which they would be often authorized to infer such previous state of insolvency, according to the particular facts or nature of the case.   A commercial bankruptcy or suspension not uncommonly presents such an alarming disparity between the assets and liabilities of the insolvent debtor, as to render it morally certain that an assignment made by him is but the announcement of a pre-existing state of insolvency ; just as the death and physical condition of a patient may often afford reasonable grounds for the inference that these are but the culmination of a previous protracted illness.

The judgment of the Circuit Court must be reversed, and the cause remanded.