# Jones & Co. *v.* Brewer.

*Action on Common Counts, for Price of Machinery Sold.*

1. *Sale of manufactured article; when property passes to purchaser.* Under a contract for the sale and purchase of a manufactured article, the property does not pass to the purchaser by his order to the manufacturer and its acceptance : there must be the selection and appropriation

[Jones & Co. v. Brewer.]

ot one particular article, and facts showing an intention to pass the title or property to the purchaser.

2. *Same.*—When the manufacturer, on receipt of the order, selects a particular article, and forwards it by railroad, as directed, taking the bill of lading in his own name, attaching to it the draft for the price, and indorsing it to the freight agent at the place of destination, with instructions to "deliver to bearer;" these facts show an intention to retain the title until payment, and a loss by accidental fire at the railroad depot falls on the seller.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by E. H. Jones, against W. P. Brewer, to recover $208, the price of a mortiser sold by plaintiff to defendant; and was commenced on the 19th February, 1885. The plaintiff was a manufacturer of machinery, doing business at Cleveland, Ohio, under the name of E. H. Jones & Co. The negotiations between the parties were conducted through the mails. The defendant wrote from Birmingham, October 14th, 1884, as follows: "If I understand your prices for Smith's new-style mortiser, you say $208 for the same, with boring attachment, rack, and pinion-feed—that is, the machine complete as the cut shows it, with above attachments, all for $208 cash. If this is right, please ship at once." The plaintiff answered this letter on the 17th October, acknowledging the receipt of the order, stating the price as "*F. O. B. factory, for $208,*" and promising prompt attention; and wrote again on the 30th October, stating that the mortiser had been shipped, and that he had drawn a sight draft for $208, the agreed price. The mortiser arrived at Birmingham, at what time does not appear, and was destroyed by the fire which burned the railroad depot, on the night of 14th November, 1884. The defendant testified that he never received the plaintiff's letter of October 30th; that he did not know the mortiser had been sent, until he found in the ruins at the depot, after the fire, remnants of a machine which looked like it; and that he had made inquiries at the depot for it several times before the fire. The letters "*F. O. B. factory,*" the plaintiff testified, meant *Free on board of cars at factory.*

On this evidence, the plaintiff requested the following charges to the jury: (1.) "If the jury believe, from the evidence, that the plaintiff delivered the machine, with attachments, at the place agreed on in the contract, then the risk of loss or injury to the property immediately vested in the defendant, and the plaintiff would be entitled to recover." (2.) "If the jury believe, from the evidence, that the plaintiff complied with his part of the contract, and delivered the machinery at the place specified in the contract, then the property, and risks of accident to it, vested in the defendant, and the plaintiff

would be entitled to recover." (3.) "The mailing of the letter to Brewer, notifying him of the shipment, is sufficient notice of the shipment, and it is not necessary that the letter should be received." (4.) "If the jury believe the evidence, they must find for the plaintiff." The court refused each of these charges, and the plaintiff excepted to their refusal; and he now assigns their refusal as error, together with several charges given at the instance of the defendant, and rulings on evidence.

MOUNTJOY & TOMLINSON, and C. A. SENN, for the appellant, cited Benjamin on Sales, §§ 319, 579, 587; *Pilgreen v. The State*, 71 Ala. 368; 6 Wheat. 104; 6 Mass. 316; 1 Pick. 401; *Sampson v. Lindsay*, 6 Porter, 123; Wade on Notice, 882.

MCADORY & GILLESPY, *contra*.

CLOPTON, J.—The single question presented by the facts of this case is, on whom, by the terms of the contract, and the dealings between the parties, falls the loss of the mortiser? Generally, "the common law fixes the risk where the title resides." The decisive inquiry is, in whom was the property at the time of its destruction by the burning of the depot in Birmingham, on the night of November 14th, 1884? The general rule may be conceded, that a contract of sale of personal property in the possession of the vendor is complete when the terms are agreed on, and there remains nothing for the seller to do, though possession may not be given, and the buyer may not be entitled to it until the price is paid. The property immediately passes to the vendee, and on him is cast the risk of loss, arising from any cause, other than the fault or negligence of the seller. The order of the defendant was to ship to Birmingham, at a named price, a mortiser of a designated manufacture, with the attachments. The selection of the particular mortiser to be shipped was left to the plaintiff. Until a specific machine, with the attachments, is selected from others of the same description, and unconditionally appropriated to the fulfillment of the contract, the sale is not executed, and no property passes. There is not the concurring assent of the contracting parties to the sale of specified property. The risk of loss of any one, or of all such machines in the possession of the plaintiff, prior to such selection and appropriation, rests on him. The order and its acceptance do not, by themselves, constitute a complete sale. Unless a particularized mortiser is agreed on, to which the contract attaches, the parties only intend an executory agreement. *Block Bros. v. Maas & Block*, 65 Ala. 211. But, even in such case, a selection and appropriation will not pass the property,

[Jones & Co. v. Brewer.]

if it is the intention of the seller notwithstanding to retain the ownership.

Did the subsequent selection and shipping of the specific mortiser and attachments operate to pass the title and ownership to the defendant before their loss, so as to cast on him the risk? If such is the operation, the plaintiff is entitled to recover; if not, the judgment rendered is correct. The question is one of intention, to be ascertained by the general rule established for the purpose of determining whether or not the property has passed. The plaintiff resided at Cleveland, Ohio, and the defendant at Birmingham, in this State. The negotiation was conducted by correspondence through the mail. The price was to be paid on delivery. In contracts between parties residing at a distance from each other, sometimes the general property is considered as passing to the buyer, so as to make him liable for the payment of the price, and to impose upon him the risk of loss, while a special property is in the seller for his security in case of non-payment.—1 Benj. on Sales, § 319. When the vendor appropriates the goods, and puts them in course of transportation, by delivery to a carrier designated by the buyer, or by shipping them as directed, consigned to him, but to be delivered on payment of the price, it may be regarded as proof of an intention to transfer the general property, and the mere retention of a vendor's lien,—protection against the insolvency or default of the buyer.—*Mer. Nat. Bank v. Bangs*, 102 Mass. 291. The case of *Pilgreen v. The State*, 71 Ala. 368, falls within this class of contracts. The defendant, who was a dealer at Calera, was requested by the buyer to send him, at Columbiana, a half-gallon of whiskey, marked *C. O. D.* The Southern Express Company was the carrier selected by the buyer, and was his agent to receive the whiskey, and the agent of the seller to receive the price. It is said: "The general property, however, passed to the buyer by the delivery to the express company at Calera; the risk of loss then passed to him; though there may have remained in the seller a special property, and though the buyer could not, without payment of the price, entitle himself to the absolute property, and to the actual possession." The present case is not of this character.

While the plaintiff made selection and appropriation of the particular mortiser and attachments, and put them on board the cars, free of charge, in course of transportation to the place of destination, the bill of lading was taken from the railroad company in his own name, and the property was consigned to himself at Birmingham. A sight draft was drawn on the defendant, against the bill of lading attached, upon which is an indorsement, signed by plaintiff, as follows: "Freight Agent, at Birmingham, Ala., please deliver to bearer, on presentation,

VOL. LXXIX.

Oct. 30, 1884." The indorsement is not to the defendant, but is of a character to authorize any person, who is the bearer, and to whom the plaintiff may deliver it, to receive the property. By taking the carrier's receipt in his own name, and putting such indorsement thereon, the plaintiff clearly manifested an intention to preserve the title to the property,—as has been said, is "nearly conclusive evidence that he did not intend to pass the property to the defendant." In the absence of countervailing testimony, the *jus disponendi* is effectually retained. In *Dows v. Nat. Exchange Bank*, 91 U. S. 618, it was said, that such is the legal effect of a bill of lading taken deliverable to the shipper's own order, and that it is inconsistent with an intention to pass the ownership of the cargo to the person on whose account it may have been purchased, even when the shipment has been made in the vessel of the drawee of the drafts against the cargo, has been repeatedly decided ; and that the inference was almost conclusive. In *McCormick & Richardson v. Joseph & Anderson*, 77 Ala. 236, it is said : "Here, the bill of lading taken from the railroad company by the shippers was made out to their order; and this operated, very clearly, to retain the title in themselves, by indicating an intention that it should not pass to the consignee, without an assignment of this 'document of title,' as it is often denominated." The same rule of construction has been asserted in numerous cases.—*The St. Jose Indiana*, 1 Wheat. 208 ; *White v. Baker*, 2 Ex. 1 ; 1 Benj. on Sales, §§ 541, 590.

This inference, arising from the bill of lading, is not rebutted by the stipulation of the contract, that the mortiser was to be put free on board. On a contract for the purchase of potatoes to be delivered *free on board*, part of the price paid in earnest of the bargain, and the balance in cash against bill of lading, where the potatoes were shipped in the purchaser's *own sacks*, under a bill of lading which made them deliverable to the vendor's order, it was held, that the retention by the vendor, in his agent's hands, of the bill of lading in the form in which it was taken, was effectual to reserve the *jus disponendi*; and that the right so reserved was not merely a vendor's lien, but involved the right to dispose of the goods by sale or otherwise, so long, at least, as the buyer remained in default.—*Ogg v. Shuter*, 1 C. P. Div. 47 ; 1 Benj. on Sales, § 562. Conceding that the defendant was notified by letter of the shipment of the mortiser, such notice did not operate to transfer the property. The letter is not evidence of title, and did not authorize the defendant to receive the goods cousigned to the plaintiff.—*Dows v. Nat. Ex. Bank, supra.*

The draft for the price was drawn payable to the order of G. A. Garretson, cashier, and, with the bill of lading, taken and

[Marks v. First National Bank.]

indorsed as stated, was deposited October 31, 1884, in the Bank of Commerce of Cleveland, Ohio, of which bank Garretson is the cashier. No further account is given of the draft, except that it was returned to the bank, unpaid, November 28, 1884, fourteen days after the loss of the property. It is not shown when it was forwarded to Birmingham, nor when it was protested, nor when presented to defendant; though the defendant testified, that he did not know that his order had been filled, or that the mortiser had been shipped, until he discovered the remnants in the ruins of the fire. The plaintiff has failed to show that the property passed to the defendant before its destruction.

There are no circumstances disclosed by the record to rebut the intention to retain ownership, evidenced by the bill of lading and the indorsement thereon. There is nothing in the evidence tending to show any other intent, and there was no inference to be submitted to the jury. On the evidence admitted, and if that excluded had been admitted, the court would have been justified in giving the affirmative charge in favor of the defendant. When such is the state of the case, erroneous rulings or instructions of the court will not work a reversal. *Block v. Maas, supra.*

Affirmed.