# Ala. Gt. So. Railroad Co. *v.* Mt. Vernon Co.

*Action against Railroad Company for Cotton Burned.*

1. *Secondary evidence of writing signed in duplicate.*—Secondary evidence can not be received, as to the contents of a writing which was signed in duplicate, until the loss or destruction of both parts is proved, or a satisfactory excuse for their non-production is shown.

2. *Liability of receiving and connecting carriers on continuous route; variance.*—A recovery can not be had against an intermediate or connecting carrier, operating part of a continuous route, under a complaint framed as against the receiving carrier, since the contract and liability of the two are materially different.

3. *Delivery of goods, as between receiving and connecting carriers; custom.*—If, by custom or course of dealing between the receiving and the next connecting carrier, loaded cars are switched off by the former on a side track of the latter's road, for immediate transportation, this amounts to a delivery without further notice; but, if they are to remain on the side track until shipping directions are given, there is no delivery, binding the latter as a common carrier, until the shipping directions are furnished.

4. *When title to goods passes; depositing bill of lading in post-office.* A delivery of goods to a common carrier, consigned to the purchaser, is a constructive delivery to the purchaser, and passes the property; but, if the bill of lading is taken in the name of the seller, and is not indorsed, though deposited in the post-office, attached to a draft for the purchase-money, and consigned to the purchaser, the title is presumptively retained by the seller, where the bill of lading provides that the goods are deliverable to the order of the seller; and payment of the draft by the purchaser, after the loss of the goods, does not vest the title in him, nor give him a right of action against the carrier.

[Alabama Great Southern R. R. Co. v. Mt. Vernon Co.]

APPEAL from Etowah Circuit Court.
Tried before Hon. JOHN B. TALLY.

RICE & DOBBS, for appellant.

W. H. DENSON, *contra.*

CLOPTON, J.—When an instrument is executed in duplicate, proof of the loss or destruction, or a satisfactory excuse for the non-production, of both parts, is essential to let in parol evidence of the contents.—1 Greenl. Ev. § 558. The bill of lading, under which the cotton in controversy was shipped, was executed in duplicate. One part was attached to the draft drawn by the shippers on the plaintiff for the purchase-money of the cotton, and was forwarded with it. The other was delivered to the attorney of the plaintiff about the time this suit was commenced. The draft having been paid, the presumption is, that the bill of lading attached to it is in the possession, or under the control of the plaintiff. While the proof was sufficient to show that the duplicate in the possession of the attorney had been lost or mislaid, there was no effort to account for the absence of the other part forwarded with the draft. The fact, that the plaintiff resides beyond the jurisdiction of the court, is no excuse for its non-production, when having custody thereof. In the absence of the requisite preliminary proof, secondary evidence of the contents should not have been admitted.

Appellee sues appellant to recover damages for the failure to deliver thirty bales of cotton, which the complaint avers were received by the defendant as a common carrier to be delivered to· plaintiff at Mount Vernon Switch, Maryland. In legal effect, the complaint alleges a contract between plaintiff and defendant to transport and deliver cotton to plaintiff at the designated point of destination. The undisputed evidence shows that the cotton was received by the East Alabama Railway Company under a contract of shipment from Gadsden, Alabama, to Mount Vernon Switch, the delivery of which at the point of destination necessitated transportation over connecting lines, the road of the defendant being the next intermediate line; each line receiving its proportion of the freight charged for the transportation of the cotton. On the evidence, the East Alabama Railway Company, having received the cotton to be delivered at a place beyond its own line of transportation, without expressly limiting its liability,

is regarded as having contracted for safe delivery at the point of destination, and as having made arrangements with other carriers for this purpose.—*Mobile & Girard R. R. Co. v. Copeland*, 63 Ala. 219. Such being the case, the obligation of the defendant was to safely transport the cotton to the terminus of its road, and deliver it to the next connecting line. There was no contract between the plaintiff and defendant to deliver the cotton at Mount Vernon Switch. The variance between the contract averred in the complaint and the contract as proved disentitles the plaintiff to recover on the complaint as framed.—*Mont. & Eufaula Railway Co. v, Culver*, 75 Ala. 587.

Notwithstanding the judgment must be reversed for the reasons above stated, a decision of other questions presented by the record will probably serve to prevent the unnecessary embarrassment or protraction of this litigation. The cotton was carried from Gadsden to Attalla, December 22, 1884, where the car containing it was switched off on a side track connected with the road of defendant, and was destroyed by fire the third day thereafter. There was evidence tending to show, that it had been the custom of the East Alabama Railway Company to transport loaded cars from Gadsden to Attalla, and switch them off on defendant's side track, for transportation over defendant's road, before any bills of lading were issued, and shipping directions given, without objection on the part of defendant's agents, and the way-bill afterwards furnished. As to the existence of such custom, the evidence was in conflict. There was evidence on the part of defendant tending to show that the East Alabama Railway Company, having no side track of its own, was permitted to switch off on the side tracks of defendant their loaded cars for Attalla, and for further transportation, as well as their empty cars, but that defendant did not receive them, and took no control over them, until furnished with way-bills or shipping directions. There was also evidence, that the agent at Attalla was required to report, to the car accountant department of defendant, the number of each car with the brand thereof, whether loaded or empty, that passed over the road daily, or were left on side tracks, and that in performance of this duty, he noted the number or brand of the car containing the cotton, and reported it in his daily car report, as loaded. On this state of the evidence, the court substantially instructed the jury, that if the agent of the defendant had been in the habit, and it had been his

custom for several years, to receive from the East Alabama Railway Company cotton and other freights, to be transported by defendant to points beyond Attalla, on its side tracks, without other notice than placing the car on such track, and the East Alabama Railway Company did so place the cotton on the side track, and the agent of defendant at Attalla, before the cotton was burned, checked the car containing it, and reported the same to the car accountant of defendant as a loaded car received from the East Alabama Railway Company, this was a delivery of the cotton to the defendant, and if, while it was so in the possession of defendant, to be transported over its road, the cotton was destroyed, the defendant is liable in this case, unless it shows the loss was caused by some act which exempts the defendant from liability.

The first proposition of the charge is, that the custom of placing the car on the side track, and it having been so placed and checked, as hypothetically stated, constitute a delivery sufficient to charge the defendant with the duties and responsibilities of a common carrier in respect to the cotton. It may be remarked that the charge is partly abstract, there being no evidence that the agent of the company reported the car to the car department as a loaded car *received from the East Alabama Railway Company.* The evidence in reference to this matter only shows, that the agent reported the car, as his duty required, to give the car department information what cars of defendant passed Attalla, or were there, and whether loaded or empty. The general rule, that to complete a delivery, the goods must be placed in the custody of the carrier, or his agents, so as to devolve on him the exclusive duty of safe keeping, is subject to be varied by usage, or a particular course of dealing between the parties. If it was the usage of the defendant to receive loaded cars from the East Alabama Railway Company for immediate transportation at any particular place, this is tantamount to the acceptance of the freight, without further notice, when delivered at such place. But, if loaded cars were switched off on a side track of defendant, there to remain until shipping directions were given, the defendant does not become a common carrier in respect to such freight until the shipping directions are furnished. "The delivery must be to the carrier or his agent for immediate transportation; for if the goods be delivered to him, to be stored by him for a certain time, or until something further is done, or until further

orders are received from the owner, the carrier becomes a mere depositary or bailee, until the appointed time has expired, or the other contingency happened, upon which the carriage is to commence, or until further orders have been given as the case may be."—Hutch. on Car., § 88. Conceding the custom, as shown by plaintiff's witnesses, the question remains, what is its extent and scope, and in what capacity did the defendant receive the cotton by its terms, express or implied? When a usage or custom is in derogation of the common law, nothing will be presumed to be within its terms, which is not clearly implied.—*Mobile Savings Bank v. McDonnell*, 83 Ala. 595. Assuming the custom to be as stated in the charge, it can not be clearly implied, that the defendant received the loaded cars, though placed on one of its side tracks, for transportation as a common carrier, before a way-bill or shipping directions were given. It should not be presumed, that the defendant assumed the high responsibilities of a carrier and the duty of immediate transportation, without knowing to whom and to what place to ship the cotton. Giving the usage its fullest scope, the defendant became a depositary or bailee of loaded cars, placed on its side track, until further orders or directions were given.

The charge is erroneous in another respect. Whether a transaction is a sale, so as to pass the property, or a sale on condition, or an executory contract of sale, is generally regarded a question of intention to be collected from the terms of the agreement and the attendant circumstances. Where the parties reside at a distance from each other, and the goods are to be transported by a common carrier, the bill of lading represents the property. If the goods, in pursuance of an order, are delivered to the carrier for delivery to the buyer, this is *prima facie* a constructive delivery to the vendee, and presumptively passes the property. But, if by the bill of lading, the goods are to be delivered to the order of the vendor, it clearly operates, in the absence of rebutting evidence, to retain the title in the vendor, and indicates an intention that the property shall not pass.—*McCormick v. Joseph*, 77 Ala. 236. The evidence is conflicting as to whom the cotton was to be delivered at Mount Vernon Switch. *Coughland* testifies that the cotton was purchased by him for and on account of Smith and Coughland, and that by the bill of lading it was to be delivered to their order at the point of destination. If this be true, they retained the *jus dis-*

12

*ponendi.* It is insisted, however, that the deposit in the post-office of the bill of lading attached to the draft, which was drawn by the vendors for the purchase-money, directed to the plaintiff, is delivery of the cotton to the vendee. Such would be the presumption if the bill of lading was properly indorsed, of which there is no evidence. But, this presumption may be rebutted by proof of an intention, that the property should not pass until the draft was accepted, or paid, as the case may be. It does not follow from the mere deposit in the post-office of the bill of lading, unindorsed, attached to the draft, as a conclusion of law, that the property passed to the plaintiff. The payment of the draft subsequent to the burning of the cotton would not operate to vest in plaintiff the property at the time of its destruction, if it had not previously passed. The charge ignores the question of ownership, which it is incumbent on plaintiff to establish, and withdraws from the consideration of the jury, the evidence tending to show that the property in the cotton had not passed to plaintiff at the time it was burned.

It results that the second charge given at the request of plaintiff is also erroneous.

Reversed and remanded.