# Atlantic Coast Line R. R. Co. *v.* Dahlberg Brokerage Co.

*Delivering Goods to Wrong Person.*

(Decided Nov. 22, 1910.   Rehearing denied Jan. 12, 1911.
54 South. 168.)

1. *Evidence; Parol to Vary Writing; Admissibility.*—Where the action was against a carrier for failure to deliver goods to plaintiff, who was both consignor and consignee, under bill of lading "onfy D," it was competent to show by parol evidence that such provision in the bill of lading, according to the usage and custom of carriers and shippers, meant that D was to be notified of the arrival of goods, but that they were to be delivered only upon the order of the consignor.

2. *Appeal and Error; Exceptions; Objections; Sufficiency.*—Where it was necessary under the evidence to submit the case to the jury on one count of the complaint, the request for the affirmative charge as to the whole complaint does not bring up for review the question whether plaintiff could recover under another count in the complaint.

3. *Pleading; Conformity of Pleading and Proof; Purpose.*—The requirement of conformity in pleading and proof is made that the adversary may be advised as to what he would be called upon to answer, and to preserve a record as protection against another suit involving the same right.

4. *Carriers; Bills of Lading; Consignee.*—A direction in a bill of lading to notify a named person therein shows that he is not intended as the consignee, except upon order of the shipper.

5. *Same; Delivery Without.*—Where a carrier delivers goods to one without a bill of lading therefor, it does so as its own peril.

6. *Same; Freight; Delivery.*—To justify the delivery of freight to another without the consignor's order, the carrier has the burden to show that the person to whom delivery was made was the true owner, entitled to the immediate possession thereof.

7. *Same; Variance; Materiality.*—Where the action was against a carrier for failure to deliver freight to one who was both consignor and consignee, and the allegation was that plaintiff drew a draft on the purposed purchaser of the goods with bill of lading attached, no material variance is shown between such allegation and proof that the draft was drawn in the name of plaintiff's principal with bill of lading attached.

8. *Same; Freight; Delivery.*—A carrier cannot justify delivery of freight to a buyer who has rejected the draft drawn on him by the consignor—consignee with bill of lading attached on the ground that the buyer had a contract with the consignor to deliver similar goods.

9. *Same; Ratification by Consignor.*—The fact that the consignor presented the draft to the buyer of the goods after the carrier delivered the goods to the buyer, without the production of the bill of lading, is not conclusive evidence of the ratification of the delivery by the consignor.

10. *Charge of Court; Misleading.*—Where the action was by the consignor-consignee for a delivery of goods to one not a holder of the bill of lading, and who had rejected a draft with bill of lading attached, a charge asserting that the burden was on the plaintiff to show that it reserved title to the goods was misleading, where there was no theory present on which the buyer might have acquired rightful possession without title.

11. *Same; Assuming Facts.*—Where the buyer rejected draft with bill of lading ‧ attached and the carrier delivered him the goods notwithstanding, and the consignor brought his action to recover, a charge asserting that the burden was on the consignor to show that it reserved title in the goods, was properly refused for assuming a sale of the goods, especially where it appeared that there had been no executed agreement of sale.

12. *Same; Conformity to Evidence.*—Where there was no evidence tending to show more than an executory contract for the purchase of goods answering a certain description, and the buyer had rejected draft with bill of lading attached, it was proper to refuse an instruction, in an action by the consignor-consignee against the carrier for delivering the goods to such person, that plaintiff could not recover, if such person bought the goods on credit.

APPEAL from Montgomery City Court.

Heard before Hon. W. W. Pearson.

Action by Dahlberg Brokerage Company against the Atlantic Coast Line Railroad Company for delivering goods to the wrong person. Judgment for plaintiff, anl defendant appeals. Affirmed.

The facts and pleadings sufficiently appear from the opinion. The following charges were refused to the defendant: (1) "The burden of proof is upon plaintiff to show that plaintiff reserved the title to the goods in the sale of them to Deans." (2) "The court charges the jury that if plaintiff, after knowing that the draft was not paid by Deans, had it presented to Deans for payment a second time, then their verdict must be for the defendant." (3) "The court charges the jury that if plaintiff, with knowledge that the defendant had delivered goods to Deans, had the draft presented to Deans for

payment, their verdict must be for the defendant." (4) "If the jury believe from the evidence that Deans bought the goods on a credit, then plaintiff had no right to recover." (5) The general affirmative charge. (6) "The jury must believe, in order to find a verdict for the plaintiff, that Deans consented to the reservation of title to the goods by the plaintiff." (8) "If the jury believe that Deans bought the goods on a credit, and that plaintiff did not reserve title to them, their verdict must be for the defendant."

JOHN R. TYSON, for appellant. The letters "onfy" were insufficient to give notice to the carrier that it was the intention of the shipper to retain title in the goods until paid for by Deans, especially in the face of the presumption that Deans was the absolute owner of the goods and must be treated by the carrier as such until it had notice to the contrary.—*Robison & Ledyard v. Pogue & Sons*, 86 Ala. 257; *A. G. S. R. R. Co. v. Mt. Vernon*, 84 Ala. 173; 1 Hutchinson on Carriers, sec. 117. There is nothing in the bill of lading indicating that the goods were sold for cash with retention of title to be paid for by draft attached to bill of lading and presented to Deans.—1 Hutchinson on Carriers, sec. 183-4. Under the allegations of the complaint, the court erred in admitting in evidence the draft drawn on Deans by the Armstrong Packing Company.—21 Enc. P. & P. 1048; *Abercrombie v. Bradford*, 16 Ala. 560; *L. & N. R. R. Co. v. Allgood*, 113 Ala. 163. The Armstrong Packing Company was the owner of the goods, and should have brought the action for their loss.— *S. & N. A. R. R. Co. v. Wood*, 72 Ala. 451; *Echols v. L. & N.*, 90 Ala. 366; *Thompson v. Fargo*, 10 Am. Rep. 342; 3 Hutchinson on Carriers, secs. 1314-1320. This principle in no wise conflicts with the principle that

an agent in possession may maintain trover against a mere trespasser.—*Myer v. Hertz,* 75 Ala. 390. The extent of plaintiff's recovery was limited to its interest in the goods, to-wit, 2 per cent on the sale.—*Williams v. Crum,* 27 Ala. 468; *McGowan v. Young,* 2 S. & P. 171. There was a clear variance between the pleading and proof. Charge 7 should have been given.—28 A. & E. Enc. of Law, 711. The day of demand was material, and should have been proven as laid.—*Williams v. McKissack,* 125 Ala. 544. Charge 3 should have been given.—1 Hutchinson on Carriers, 183. Charges 6 and 8 should have been given.

J. Lee Holloway, for appellee. The letters "onfy" in the bill of lading were subject to be explained by parol evidence.—*Mouton v. L. & N.,* 128 Ala. 531; *Hibler v. McCartney,* 31 Ala. 501; *Barlow v. Lambert,* 28 Ala. 704; *Lawson v. Carriers,* 155 Ala. Under the facts in this case, the carrier was liable to the shipper or owner of the property for the amount of the draft if the purchaser failed to pay for the property.—Moore on Carriers, secs. 162, 170 and 171. Demand was not necessary in this case.—*Kyle v. Gray,* 11 Ala. 233; *Brown v. Beason,* 24 Ala. 466; *Haas v. Taylor,* 80 Ala. 466; 13 Enc. of Evi. 83. The draft was properly admitted in evidence and did not raise a material variance in the pleading and proof.—13 Enc. of Evi. 68; *Walker v. Arnstein,* 38 Ga. 250. The fact that the plaintiff was the licensee, bailee, pledgee or lessee is sufficient to establish a special property in him, thus entitling him to maintain trover.—*Spence v. Mitchell,* 9 Ala. 744; *Nation v. Hawkins,* 11 Ala. 859; *Byrd v. Womack,* 69 Ala. 390; *Young v. East Ala. R. R. Co.,* 80 Ala. 100. The appellant could maintain trover against Deans.— *Walker v. L. & N.,* 111 Ala. 233. Counsel discusses

other assignments of error, but without further cita-
tion of authority.

SAYRE, J.—The complaint was reduced by the vol-
untary action of the plaintiff, and by rulings of the
court not now in question, to counts 6 and 7. Count 6
declared upon the wrongful delivery of plaintiff's goods
by the defendant carrier to one Chas. Deans. Count 7
declared upon defendant's failure or refusal to deliver
to plaintiff. The bill of lading which evidenced the con-
tract of carriage between the parties provided that the
defendant was to make delivery to "onfy" Deans. In
the complaint this collocation of letters was averred to
have been employed by the parties as meaning "order
notify," and the court properly received in evidence the
bill of lading, and along with it the testimony of wit-
nesses, familiar with the usage obtaining in the trans-
action of business between shippers and carriers, by
which this sign or technical collocation, not in general
use, was shown to have a meaning in accordance with
the averment.—*Mouton v. L. & N. R. R. Co.*, 128 Ala.
537, 29 South. 602. The direction in a bill of lading
to "notify" a named person shows that such person is
not intended as the consignee. Otherwise the direction
would mean nothing. Moore on Carriers, 170. The
meaning of the bill of lading, as explained by the tes-
timony, was that Deans was to be notified of the arrival
of the goods at destination, but that they were to be
delivered only to plaintiff's order. Plaintiff was both
consignor and consignee. The sale was to be a sale for
cash; at least, that is what the vendor understood it
was to be. In pursuance of this understanding and pur-
pose, plaintiff drew upon Deans, draft, with bill of lading
attached, for the price. Deans refusing to pay, the draft
and bill of lading were returned to plaintiff. Neverthe-

less defendant delivered the goods to Deans. The carrier delivers at its peril goods to one without a bill of lading. So far no doubt arises as to plaintiff's right to maintain the action. But it appeared that in the effort to make a sale and in the shipment of the goods plaintiff was acting as the agent of the Armstrong Packing Company under the following conditions: The Armstrong Company shipped its goods to plaintiff company for distribution in the latter's territory. Plaintiff shipped the particular goods in question, with a view of delivery to Deans, out of the Armstrong Company's stock in plaintiff's warehouse upon receipt of an order from the Armstrong Company's traveling salesman. Plaintiff company passed on the credit of proposed buyers, exercising its own judgment in filling orders and accounting to the Armstrong Company, and receiving a commission of 2 per cent. on sales made by it. On these facts the appellant contends that the Armstrong Company alone could maintain an action for the loss resulting from the delivery of the goods to Deans. A number of cases are cited in which the question was whether the carrier should respond to the consignor or consignee, but they are without influence, for here the plaintiff is both. Certainly the carrier is discharged from liability when it surrenders property, taken for transportation, to the true owner, for that. is not a matter of choise. But, to justify a delivery without the order of the consignor, the carrier assumes the burden of proving that the person to whom delivery has been made was the true owner having the right of immediate possession. —Moore on Carr, 156. "The rule is that the depositary is bound to redeliver or restore the chattels bailed to the bailor, and the bailor may recover the goods of his bailee without proving his right of property in them." —*Riddle v. Blair*, 148 Ala. 461, 42 South. 560. This

[Atlantic Coast Line R. R. Co. v. Dahlberg Brokerage Co.]

rule applies to the common carrier, and the carrier must deliver according to the shipper's order or the terms of the bill of lading, unless the true owner has interposed and asserted his rights.—Moore on Carr., supra; Hutch. on Carr., § 750. This disposes of a number of the assignments of error in accordance with the rulings of the trial court.

In count 6 "plaintiff avers that it drew a draft on May 21, 1909, through the Montgomery Bank & Trust Company, with said bill of lading thereto attached, and sent the said draft with said bill of lading attached to the People's Bank at Troy, Ala., for collection." Then follows an averment that Deans failed to pay, and that defendant delivered the goods to him notwithstanding he had so failed and had not the bill of lading. The evidence was that the plaintiff drew the draft in the name of the Armstrong Packing Company. It is insisted that this constituted a material and fatal variance. The purpose of the rule requiring correspondence between pleading and proof is that the opposite party may be advised of what he will be called upon to answer and to preserve a record as a protection against another proceeding involving the same rights.—*Bowie v. Foster*, Minor, 264. At this time nothing more is insisted upon than substantial conformity. The averment that the bill had been drawn by the Armstrong Company was not material to a statement of plaintiff's cause of action, nor was it descriptive of what was material. The material fact was that defendant had delivered to Deans goods consigned to plaintiff notwithstanding he had no bill of lading. The averment as to which the variance is alleged was the averment of a fact evidential of the material fact otherwise sufficiently averred. The circumstantial particularity was unnecessary. The case was as well stated without it.

The reason of the rule did not require that the mere circumstance be proved with literal exactness, or, indeed, at all. The case would be different, of course, if the suit had been upon the draft as for a failure to accept or pay. As for the point here taken, the general charge was well refused to the defendant.

Again, it is insisted that the fact that plaintiff through its agent presented its bill of lading to defendant at Troy, the place to which the goods were consigned, demanding delivery of the goods, and that defendant then and there failed or refused to deliver, as averred in count 7, did not constitute a conversion by the defendant, because it had before that time delivered the goods to Deans. Without considering the sufficiency of this excuse, the question here made may be properly disposed of on the ground that it could only arise under count 7 of the complaint. It did not affect count 6, which averred a conversion by the delivery to Deans. It being necessary, on considerations already stated, to submit to the jury the case alleged in count 6, the affirmative charge on the whole case did not raise the question whether plaintiff could recover on count 7. It was not raised otherwise, and need not now be considered.

Charge 1, refused to the defendant, was so refused without error. The language of this, and several other of the charges, was misleading to some extent, for it spoke of the reservation of title by the plaintiff, thereby seeming to imply necessity for the consideration of the case as one in which plaintiff might have parted with the possession to Deans while retaining the title. No phase of the evidence presented a case in which Deans may have acquired a rightful possession without the title. But apart from this, and without laying undue stress upon it, the charge assumed a sale of the

goods to Deans; whereas, plaintiff's case, finding strong if not undisputed support in the evidence, was that there had been no executed agreement of sale, because, though Deans may have supposed he was buying on credit, the minds of the parties to that transaction were not agreed to that effect, and that its goods had been delivered out of the possession of its agent and bailee without its consent and against its will.

Some charges requested by defendant set up, in different shapes, the proposition that plaintiff could not recover if Deans "bought" the goods on credit. The giving of these charges would have been justified upon the ground only that if Deans bought the goods, as predicated in the charges, he became the true owner. Deans' testimony was that he had "bought" the goods on credit. He leaves it in doubt whether he supposed he was buying the goods from the Armstrong Company directly or from the plaintiff. He based his conclusion that he had bought upon facts which included no delivery— upon what had passed between him and the traveling salesman, and upon either one or the other of two additional facts, viz., that plaintiff's agreement to the terms of the order to the salesman, as he understood it, was to be implied from the subsequent negotiation and the shipment of the goods, or that when he received the goods from defendant he supposed they might have come from the Armstrong Company directly and in accordance with his understanding as to terms. Neither party to the suit produced the correspondence which constituted the negotiation between plaintiff and Deans, and they differed diametrically as to its meaning and effect. Conceding the truth of Deans' testimony in its entirety, he had at best acquired, not the title to the specific goods, but an executory contract for the purchase of goods which should answer a certain de-

scription. In advance of delivery no title passed. The only delivery shown was a delivery of goods in respect to which plaintiff had rights and responsibilities which could not be changed without its assent. A delivery to Deans of goods held by plaintiff for disposition on its own terms and responsibility, such delivery being unauthorized by plaintiff, was not to be justified on the ground that Deans had a contract with the Armstrong Company for the delivery of goods of similar kind and quality. The testimony, then, as to the terms on which Deans bought the goods, amounted to nothing , and might well have been ignored. Defendant's right to deliver to him depended upon the conditions of the plaintiff's delivery to it—whether it thereby became bailee for plaintiff or for Deans—and that was the sole question in the case. If the word "bought" in these charges be taken as the equivalent of an executed contract of purchase, they were abstract. If taken according to the meaning attached to it by the witness Deans, the charges required the determination of the rights of the parties upon an immaterial issue.

After defendant had delivered the goods to Deans, and after the draft had been returned to plaintiff unpaid, the bill of exceptions shows that it was again "sent to the bank of Troy for collection." Charges were requested by defendant to the effect that, if plaintiff had the draft presented to Deans a second time, plaintiff could not recover. If plaintiff with knowledge of the facts ratified the delivery to Deans, it could not hold defendant company liable. But that is not the statement of the charges. That statement is, in substance, that a second presentation constituted a ratification. Whether it did depended upon the intention. It may have been made for the relief of defendant. At best, this fact was some evidence of ratification, not ratification per se. These charges were properly refused.

What has been said will indicate our opinion on all questions raised.

The judgment will be affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and EVANS, JJ., concur.