# Howell v. Home National Bank.

## Detinue.

(Decided November 25, 1915.   Rehearing denied January 20, 1916.
70 South. 685.)

1. **Detinue; Title; Right to Possession; Burden.**—In the action of detinue the burden is on plaintiff to show a legal title to the property and a right of immediate possession.

2. **Sales; Order and Acceptance; Completion.**—Where the selection of the particular motorcycle was left to the buyer, an order for a motorcycle and an acceptance thereof did not constitute a completed sale.

3. **Same; Transfer of Title.**—Where the seller took a bill of lading consigned to itself and attached same with endorsement thereon to its draft on the buyer, payable to the bank to which it delivered the same, there was no delivery to the buyer of the machine, such as was needed to complete the sale and vest title in the buyer.

4. **Detinue; Issuance; Title.**—Where it appeared, in an action brought by the buyer to recover a motorcycle, that though the machine had been shipped consigned to the seller, the sale was executory, and title had never passed to the buyer, the buyer was not entitled to recover, regardless of whether there had been any breach of contract by the seller; the only question involved in detinue being the question of title and right to immediate possession.

APPEAL from Geneva Circuit Court.

Heard before Hon. H. A. PEARCE.

J. W. Howell brought detinue against the Central of Georgia Railway Company for a motorcycle in which the Home National Bank interposed as claimant. From a judgment for claimant plaintiff appeals. Affirmed.

Transferred from Court of Appeals under act creating said court.

W. O. MULKY, for appellant.   C. D. CARMICHAEL, for appellee.

GARDNER, J.—Appellant on June 23, 1913, brought statutory detinue against the Central of Georgia Railway and E. B. Baldwin for the recovery of an M. M. Twin motorcycle in possession of the defendant. The property was seized, and on September 8, 1913, appellee filed its claim, executing the necessary bond, and trial was had between appellant and appellee as to

the title to the said property (see Code, § 3792), resulting in a judgment for the appellee; the court giving at its request the general affirmative charge. From this judgment the appeal is prosecuted, and the only error assigned is the giving of said charge.

In March, 1913, appellant and the American Motor Car Company, a manufacturer of motorcycles at Brockton, Mass., entered into written negotiations respecting the sale and purchase of a motorcycle. The negotiations and contract are made to appear by correspondence offered in evidence. In reply to letter of appellant said motor company on March 15, 1915, wrote him that they would exchange one of their "new 1913 Twins" for appellant's old machine and a difference of $50. Appellant accepted the proposition, and on April 4, 1913, received a letter in which the motor company directed him to send a deposit of $25, with his order and bill of lading for the old machine, and the letter further stated: "We will make shipment by sight draft against bill of lading for the balance." Upon receipt of this letter appellant shipped his old machine and sent the $25 as directed, with the bill of lading. On April 14th the motor company wrote in regard to a slight change in the order, and stated that a memorandum of the agreement was inclosed, and concluded by saying that the machine would be prepared for shipment at an early date. The motorcycle was shipped on May 14th. Appellant received another letter dated May 20th, and testified that about this time he received a bill from the company, dated May 14th, which shows the money consideration as $150, instead of $50, and the balance due as $125, instead of $25, and that this was the first knowledge he had had that $125 was claimed as a balance due.

The machine in question was shipped on May 14th, consigned to "Order of American Motor Company, Notify J. W. Howell." The bill of lading was indorsed by said motor company, and was delivered to claimant, Home National Bank, attached to draft drawn by said motor company in sum of $125 on J. W. Howell and in favor of said bank; the latter discounting same for $124. This draft, with bill of lading attached, reached the collecting bank at Coffee Springs, Ala., and, appellant declining to pay, were returned. Appellant tended to said collecting bank the sum of $25, and tendered to the railway company the

freight charges due, and subsequently brought the said $25 and the freight money and deposited it in court upon bringing this suit.

There is some evidence on the part of claimant indicating that the figures "$50" in the letter of March 15th was a mistake and should have read "$150," as some of the witnesses connected with the motor company testify that the balance due was $125. The record, however, is unsatisfactory, and rather meager details of the transaction are given; but we do not consider this material to a disposition of the cause. Much stress is laid upon the fact that the claimant bank purchased or discounted the draft with bill of lading attached in good faith and in due course of business, and that it is protected under the doctrine of the case of *Cosmar Cotton Co. v. First Nat. Bank*, 171 Ala. 395, 54 South. 621, 39 L. R. A. (N. S.) 1173, Ann. Cas. 1913B, 42. The conclusion we have reached, however, renders a consideration of this insistence unnecessary, and the same is therefore laid out of view.

(1, 2). In this action the burden rested upon the plaintiff to show a legal title to the property involved and the right of immediate possession. This is essential to support an action of detinue.—*Hensley v. Orendorff*, 152 Ala. 599, 44 South. 869. There can be no controversy from this record that the sale and purchase of the motorcycle was considered by both parties to be a cash transaction. It is quite clear that the order and its acceptance did not by themselves constitute a complete sale. The selection of the particular motorcycle to be shipped was left to the plaintiff. As said by this court in *Jones v. Brewer*, 79 Ala. 545: "Until a specific machine, with the attachments, is selected from others of the same description, and unconditionally appropriated to the fulfillment of the contract, the sale is not executed, and no property passes. There is not the concurring assent of the contracting parties to the sale of the specified property. * * * The order and its acceptance do not, by themselves constitute a complete sale. Unless a particularized mortiser is agreed on, to which the contract attaches, the parties only intended an executory agreement. * * * But even in such case a selection and appropriation will not pass the property, if it is the intention of the seller notwithstanding to retain the ownership."

Clearly, therefore, up to the time of the shipment of the motorcycle the contract was executory. In *A. G. S. Ry. v. Mt. Vernon Co.*, 84 Ala. 173, 4 South. 356, it is said: "Whether a transaction is a sale, so as to pass the property, or a sale on condition, or an executory contract of sale, is generally regarded a question of intention to be collected from the terms of the agreement and the attendant circumstances. Where the parties reside at a distance from each other, and the goods are to be transported by a common carrier, the bill of lading represents the property. If the goods, in pursuance of an order, are delivered to the carrier for delivery to the buyer, this is prima facie a constructive delivery to the vendee, and presumptively passes the property. But, if by the bill of lading the goods are to be delivered to the order of the vendor, it clearly operates, in the absence of rebutting evidence, to retain the title in the vendor, and indicates an intention that the property shall not pass.—*McCormick v. Joseph*, 77 Ala. 236."

(3) When the motorcycle was shipped, the motor company took the bill of lading, consigned to themselves, and attached the same, after an indorsement thereof, to their draft on appellant payable to the claimant, the Home National Bank, and delivered the same to said bank. In the case of *Jones v. Brewer, supra*, it was said: "By taking the carrier's receipt in his own name, and putting such indorsement thereon, the plaintiff clearly manifested an intention to preserve the title to the property —as has been said, is 'nearly conclusive evidence that he did not intend to pass the property to the defendant.' In the absence of countervailing testimony, the jus disponendi is effectually retained. In *Dows v. Nat. Exch. Bank*, 91 U. S. 618 [23 L. Ed. 214], it was said that such is the legal effect of a bill of lading taken deliverable to the shipper's own order, and that it is inconsistent with an intention to pass the ownership of the cargo to the person on whose account it may have been purchased, even when the shipment has been made in the vessel of the drawee of the drafts against the cargo, has been repeatedly decided, and that the inference was almost conclusive. In *McCormick & Richardson v. Joseph & Anderson*, 77 Ala. 236, it is said: 'Here the bill of lading taken from the railroad company by the shippers was made out to their order; and this operated, very clearly, to retain the title in themselves, by indi-

[Howell v. Home National Bank.]

cating an intention that it should not pass to the consignee without an assignment of this "document of title," as it is often denominated.' The same rule of construction has been asserted in numerous cases."

The same principle is recognized in the recent case of *A. C. L. Co. v. Dahlberg,* 170 Ala. 617, 54 South. 168, wherein it was said: "Conceding the truth of Deans' testimony in its entirety, he had at best acquired, not the title to the specific goods, but an executory contract of the purchase of goods which should answer a certain description. In advance of delivery no title passed. The only delivery shown was a delivery of goods in respect to which plaintiff had rights and responsibilities which could not be changed without its assent."

The bill of lading in that case was made out similar to the one here under consideration, as the plaintiff there was consignor, and also consignee, with direction in the bill of lading to notify Deans. The bill of lading here under review was also made out to the shipper, with directions to notify J. W. Howell.

"The direction in a bill of lading to 'notify' a named person shows that such person is not intended as the consignee; otherwise the direction would mean nothing."—*A. C. L. Ry. v. Dahlberg, supra.*

It is therefore quite clear that no delivery of the machine by the motor company was made to the plaintiff in this case.

"Actual delivery is considered as of the greatest importance in determining whether there was an intention to pass title, but there may be a constructive delivery, and the intention of the parties, however disclosed, is conclusive on the question whether title has passed."—*Shriner v. Mayer,* 171 Ala. 112, 55 South. 156, Ann. Cas. 1913A, 1103.

See, also, *Edwards v. Meadows,* 71 Ala. 42; *Shealy & Finn. v. Edwards,* 73 Ala. 173, 49 Am. Rep. 43; *Allen & Co. v. Maury,* 66 Ala. 10.

In *Pilgreen v. State,* 71 Ala. 368, cited by counsel for appellant, it is shown that there was a delivery to the purchaser's agent, the express company, to which fact attention was directed by this court in *McCormick & Richardson v. Joseph & Anderson, supra,* and in *McClure v. State,* 148 Ala. 6625, 42 South. 813.

"A contract may be perfectly binding between the parties, so as to give either of them a remedy against the person and gen-

eral estate of the other in case of default, but having no effect to transfer the property or right of possession in the goods themselves, and therefore giving to the proposed purchaser none of the rights and subjecting him to none of the liabilities, of an owner; and this is an 'executory agreement.' Or it may be a perfect sale, as already defined, conveying the absolute general property in the thing sold to the purchaser, entitling him to the goods themselves, independently of any personal remedy against the vendor for breach of contract, and rendering him liable to the risk of loss in case of their destruction; and this is a 'bargain and sale of goods.' "—Benj. on Sales, 98.

(4) We are not here concerned, therefore, with whether or not there has been a breach of contract on the part of the motor company, but we are concerned only with the question of title to the property involved and the right of plaintiff to immediate possession thereof. The evidence shows without dispute the intention on the part of the seller to retain the full control and possession of the property and that it should not be delivered to this appellant until payment of the draft. We hardly see how it could be contended, under the facts disclosed in this record, that the title to the motorcycle could have passed to the appellant upon a delivery to the carrier at Brockton, Mass. The motor company, under the bill of lading, still had control of the machine, and, had the company declined the further shipment thereof, it could not be contended that the sale had been executed and title passed. Clearly the mere fact that the property was transported by the motor company to the point of destination could make no change as to the title or control of the property by the shipper, unless and until the terms upon which it was shipped were complied with.

Whatever, therefore, may have been the rights of appellant as for a breach of an executory contract, we are of the opinion that this record shows without conflict that the sale was not an executed one, and the title to the machine never passed to this appellant. His rights of recovery depended upon his showing a legal title in himself as well as the right of immediate possession. This, we conclude, he has failed to do, and there was no error, therefore, in giving the affirmative charge as requested.

The judgment of the court below is affirmed.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.