# Fairbanks, Morse & Co. *v.* The Eureka Company.

*Detinue for a " Track Scale" by Vendor after conditional sale.*

1. *Record of written contract, when not notice.*—The record of a written contract for the conditional sale of personal property, in the office of the judge of probate, is unauthorized by statute and is not notice to a sub-purchaser, of the claim of the original vendor.

2. *Possession only prima facie evidence of title.*—The possession of personal property is only *prima facie* evidence of title, and cannot be relied on as higher evidence to divest the true owner of the title to his property.

3. *Conditional sale; right of vendor against sub-purchaser.*—A purchaser of personal property from one who holds possession under an incomplete conditional sale cannot defeat a recovery by the original vendor, although he is a *bona fide* purchaser for value and without notice.

APPEAL from Shelby Circuit Court.

Tried before Hon. W. L. WHITLOCK.

This was an action of detinue brought by Fairbanks, Morse & Co., against the Eureka Company, to recover a thirty ton "Track Scale." On the trial, it was shown that one C. O. Godfrey sent the following order to the plaintiffs on the day of its date, viz : "Town of Helena, County of Shelby, State of Alabama. Messrs. Fairbanks, Morse & Co.—Please send me from Nashville one thirty ton track scale, thirty-three feet platform, marked to C. O. Godfrey, Helena, for which I agree to pay seven hundred and fifty dollars, as follows : One-

third cash when built, balance in four and six months : and it is agreed, that you do not part with nor relinquish your claim on or title to said scale until it is fully paid for ; and in default of the payment for the scales as agreed, you or your agent may, without process of law, take possession of and remove said scale, and collect reasonable charges for the use of the same. Scale warranted durable and accurate. To be built by Fairbanks, Morse & Co. about as soon as ready. If the purchaser delays having the scale built thirty days after the time set for delivering, then this order shall become due and payable the same as if the scale had been built at the time stated.   C. O. Godfrey."

On December 17th, 1874, this contract was filed in the office of the judge of probate of Shelby county for record, and was duly recorded there. The scale was sent by plaintiffs to Godfrey, and was received and used by him for weighing coal. One-third of the purchase-money—$250—was paid in cash. At the time of the trial, the scale was in possession of the Eureka Company, and was worth about $500. The evidence for the defendant showed that on April 28th, 1875, said Godfrey, who had possession of the scale and was using it, sold it to the defendants for value, and conveyed it to them in writing ; that defendant was a *bona fide* purchaser of the scale and had no actual notice of the written contract between plaintiffs and Godfrey, which is set out above, nor of any claim to the scale by any person other than said Godfrey ; that defendant received possession of the scale on April 28th, 1876, and had used it since that time ; that it had no notice that the paper set out above had been recorded or had been filed for record. The court charged the jury that the mere fact that the contract between Godfrey and the plaintiffs was recorded in the office of the judge of probate of Shelby county would not be notice to the defendant of plaintiff's claim to the scale.  The court further charged the jury, " that if the jury believe, from the evidence, that the only notice which defendant had of the claim, title or lien of the plaintiffs to the scale when defendant bought of Godfrey, was the mere fact that said writing was recorded as aforesaid, and that the defendant was at the time of the purchase without any actual notice of plaintiffs claim or title to the scale, and that defendant purchased said scale in good faith from said Godfrey, and paid him at the time an adequate and valuable consideration therefor, while said Godfrey had the actual use and possession of said scale; and if defendant has shown these facts to the satisfaction of the jury, they will find the issue in favor of the defendant ; " and if the jury are satisfied that the foregoing is all of the evidence, and that all the

facts as stated above are true, in that event, they will find for the defendant." The plaintiffs excepted to these charges. There was a verdict for the defendants, and the plaintiffs appealed to this court, and assign the charges of the court as error.

WILSON & WILSON, and J. N. ARRINGTON, for appellants.

TERRY & LANE, for appellee.

BRICKELL, C. J.—In *Sumner v. Woods*, 52 Ala. 94, it was decided, that a sale of a chattel, the vendor parting with possession, upon the condition that the title should not pass until the purchase-money was paid, was valid between the parties, but, as to *bona fide* purchasers from the vendor, he would be deemed the true owner, and they would acquire a title which would prevail over that of the vendor, though the condition was never performed. The reason given for the decision was, that " the great mark of ownership of personal property is *possession ;* and when a contract is made, by which it is intended that the property should be apparently in one, while it is in fact in another, the world has a right to suppose that the one in possession is the owner ; and such a contract cannot be set up, to the prejudice of *bona fide* creditors and purchasers without notice. As has been justly said, such contracts are out of the usual course of business, unnecessary, and directly tend to the injury of those who are not in the secret." The only authority cited is *Martin v. Mathiot,* 14 Serg. & R. 211.

In *Dudley v. Abner,* 52 Ala. 572, there was a very elaborate discussion of the question by Justice MANNING, who was of the opinion, that a sale upon condition that the title to the chattel should remain in the vendor until the purchase-money was paid, was in its nature a parol chattel mortgage, void as to *bona fide* purchasers, and as to creditors, unless there was registration of it in pursuance of the statute. The contrary doctrine was asserted in *Holman v. Lock,* 51 Ala. 287, in which it was in effect decided, without discussion, that a sale and delivery of goods, on condition that the property was not to vest in the vendor until the purchase-money was paid, did not pass the title until the condition was performed. If the condition was not performed, the vendor could reclaim and re-possess himself of the property, from one acquiring possession from the vendee, by a purchase for a valuable consideration, in good faith, and without notice.

The court was soon involved in difficulty and embarrassment, by the decisions in *Sumner v. Woods,* and *Dudley v*

*Abner, supra,* when it was sought to apply the principle on which they rest to executory agreements of sale, and to other cases in which the owner had voluntarily intrusted the possession of goods to another, not clothing him with any other *indicia* of ownership than mere possession and use.—*Leigh v. M. & O. R. R. Co.* 58 Ala. 165. In view of the conflict of decisions in this court, and of these embarrassments and difficulties, in *Sumner v. Woods,* at the present term, the former decision in the cause, and that of *Dudley v. Abner, supra,* was overruled, and the authority of *Holman v. Lock, supra,* was restored.

The authorities, English and American, with but few exceptions,—and some of these, as in Illinois, dependent on statutes,—are conclusive on the right of a vendor, in the sale and delivery of a chattel, to stipulate for a retention of title until the performance of conditions agreed upon as precedent to the passing of title.—Story on Sales, § 313, and notes; Benjamin on Sales, §§ 320 *et seq.,* and notes; 2 Kent's Com. 498; *Fosdick v. Schall,* 99 U. S. 235. In such a case, the vendee is clothed with no other apparent *indicia* of ownership than the possession; and with that a mere bailee is clothed. The contract is not illegal, or immoral, or violative of public policy, unless it can be said that it is wrong for the owner ever to part with possession, because the world may be induced to suppose that the possessor is the owner, and as such to deal with him. The truth is, possession is but *prima facie* evidence of ownership of all species of personal property, except commercial paper; and whoever deals upon the faith of it, as evidence of ownership, must accept it as the law declares it—*prima facie,* or presumptive evidence only, subordinate to the paramount title, which would prevail if the possession was not changed by the transaction into which he enters. If he complains that the owner has misled him by parting with the possession, the answer is, that the possession is but presumptive evidence of title, and beyond it, if protection is sought, inquiry ought to be made.—*Leigh v. M. & O. R. R. Co.* 58 Ala. 178. The observation of WILLIAMS, C. J., in *Forbes v. Marsh* (15 Conn. 398), has been often quoted, as eminently just: "The vendee comes into possession of property, which was known to belong to another man. Whether, therefore, the vendee had borrowed it, or hired it, or purchased it, becomes a matter of inquiry, and ought to be ascertained by him who proposes to trust his property on the faith of this appearance; for the law offers its protecting shield to those who attempt to protect themselves. Accordingly, we find that all these cases of conditional sales, made *bona fide,* have been held good as against attaching creditors,

as well as against the parties." It is only when some one has relied on possession, as conclusive evidence of ownership, while the law authorizes him to treat it as simply *prima facie*, or presumptive evidence, that there is complaint of this and kindred principles, which have long prevailed in the law of sales of personal property. The law has not invited such reliance, and it is folly, or misfortune, that he ascribes to it a higher dignity, and a conclusiveness the law has not ascribed. When the owner of personal property parts with the possession merely, not conferring any other *indicia* or evidence of ownership, it is a wrong to him, a deprivation of his property without his consent, if the possession is converted into more than *prima facie* evidence of title. That the possession is coupled with a contract, by which, on the performance of a condition, the possessor can acquire title, cannot be material; for, if the purchaser from him has notice of the contract, he is without equity to protection against it; and if he has no notice, he is merely in the condition in which the most prudent have often been placed, purchasing property from one who has no title, or an infirm title.

It is a universal and fundamental principle of the law of personal property, that the owner shall not be deprived of his property without his consent, except by due process of law. "The maintenance of the principle," as was said by Justice FIELDS, in *Telegraph Co. v. Davenport*, 97 U. S. 372, "is essential to the peace and safety of society, and the insecurity which would follow from any departure from it, would cause far greater injury than any which can fall, in cases of unlawful appropriation of property, upon those who have been misled and defrauded."—*Saltus v. Everett*, 20 Wendell, 270; *Blackman v. Lehman*, 63 Ala. 547; *Leigh v. M. & O. R. R. Co.* 58 Ala. 165. Upon this principle rest numerous cases, to be found in the books, many of them seemingly hard and distressing, in which honest and innocent persons, trusting to possession as the evidence of ownership, have been compelled to yield to the true title, even though they were without remedy to recover the money paid, or the property with which they had parted.

It has been, for many years, a necessity here to make contracts for the purchase of personal property, dependent on the condition of paying the purchase-money. Such contracts are, and have been, of almost daily occurrence; and no greater insecurity in the transaction of business could be introduced, than would follow from a continued departure from the well-settled law affirming the validity of such contracts, and a continued adherence to the doctrine announced in *Sumner v. Woods*, and *Dudley v. Abner, supra.* Take this case

(8)

as an illustration : a chattel of considerable value was sold ; one-third of the purchase-money was paid in cash, and the remainder to be paid in equal installments, at four and six months, with a stipulation that the title was not to pass until full payment of the purchase-money. The contract is in writing, and it was made before the decisions were rendered in the cases referred to, and doubtless in reliance upon the rule, so well established by the great weight of authority. The contract was recorded ; but the record, not being authorized by statute, does not afford notice to the world ; and so it was claimed by the appellee, who purchased from the vendee, without notice of the contract by which he acquired possession. If the rulings of the Circuit Court are sustained, the vendor, against his consent, and when he had taken every precaution to avoid it, is deprived of his property, because the appellee purchased relying wholly on possession as evidence of ownership. The possession was merely *prima facie*, or presumptive evidence of ownership, and, without injustice, and introducing insecurity and uncertainty into the transactions of business, cannot be regarded and relied upon as evidence of a higher degree, divesting the true owner of his property.

The rulings of the Circuit Court are erroneous ; and the judgment must be reversed, and the cause remanded.