# Stone & Gambrell *v.* Waite & Co.

| 88 | 599 |
|----|-----|
| 110 | 245 |

| 88 | 599 |
|----|-----|
| f128 | 164 |

*Action for Money Had and Received, with Counts on Special Contract.*

1. *Executory contract for sale of goods; when title passes; destruction of goods by fire.*—Under an executory contract for the sale of a stock of goods, at a price to be ascertained on taking an inventory, one-half to be paid in cash, the purchaser's note given for the residue, and the title retained by the seller until these stipulations are complied with; if the goods are accidentally destroyed by fire, after the inventory has been taken, and the key of the store delivered to the purchaser, but before the necessary calculations have been made to ascertain the price, before any cash payment has been made, and before the purchaser's note has been given, the loss falls on the seller, and he can not recover the stipulated price, nor the money deposited by the purchaser as a forfeit; but he is excused from the performance of his contract, and the purchaser can not recover the forfeit deposited by him.

[Stone & Gambrell v. Waite & Co.]

2. *Same; subsequent modification of contract.*—A subsequent agreement between the parties, when beginning to take an inventory of the goods, to keep the store open for the accommodation of customers, and continue making sales, the purchaser selling the goods which had been inventoried, and the vendor selling the others, is not inconsistent with the retention of title by the vendor as provided in the original contract.

APPEAL from the Circuit Court of St. Clair.

Tried before the Hon. LEROY F. BOX.

This action was brought by Stone & Gambrell, suing as partners, against D. W. Waite & Co., another partnership, and was commenced on the 27th September, 1888. The complaint contained the common count for money had and received, claiming $350, and several special counts based on a written contract for the sale of a stock of goods by defendants to plaintiffs, which were destroyed by fire during the night of the day on which, late in the evening, the inventory was completed. No part of the stipulated purchase-money had been paid, but the plaintiffs had deposited $350 in the safe in the store-house, to be forfeited if they failed to comply with the stipulations of the contract, and to be received as part of the cash payment on compliance; and the defendants deposited their check for $350, as a forfeit in case of their default. The stipulations of the written contract for the sale of the goods, in reference to these deposits, were in these words: "For the faithful performance of all the above, the said party of the first part has drawn a check for $350 on the Alabama National Bank, and the said party of the second part $350 in cash, which said check and cash, with this agreement, shall be deposited with ourselves in D. W. Waite & Co.'s safe; and in the event the said party of the first part fails from any cause to comply with all the terms in this agreement, shall forfeit to the party of the second part the $350 represented by said check; and if the party of the second part shall fail to comply with the terms of this agreement, he shall forfeit to the said party of the first part said $350." After the destruction of the goods by fire, with the building in which they were, the defendants opened the safe, and took out the money and the check; and the plaintiffs sought in this action to recover the two sums.

The opinion states the material stipulations of the contract between the parties, and the other material facts bearing on the points decided. The assignments of error are founded on the rulings of the court, adverse to the plaintiffs, on the pleadings and evidence, and in the charge given.

BISHOP & WHITSON, for appellants.—The contract was executory, the title to the goods never passed to the plaintiffs, and the loss fell on the defendants.—Benjamin on Sales, vol. 1, §§ 366, 414-25; *Fulmer v. Bean*, 34 N. H. 300; *Shines v. Steiner*, 76 Ala. 458; *McCall v. Powell*, 64 Ala. 254; *Harmon v. Goetter, Weil & Co.*, 87 Ala. 323; *Prescott v. Locke*, 12 Amer. Rep. 55; *Burbank v. Crocker*, 7 Gray, 158; *Rogers v. Danforth*, 71 Maine, 222; *Leigh Bros. v. M. & O. Railroad Co.*, 58 Ala. 165.

JNO. W. INZER, *contra.*—The retention of the title by the vendors was intended for their benefit, and might be waived by them; and the evidence shows that it was waived by the subsequent agreement of the parties, and their conduct under that agreement. That parties to a contract may alter, modify, or rescind it at pleasure, see cases cited in 3d Brick. Digest, 152, §§ 146-7.

CLOPTON, J.—On March 7th, 1888, the parties entered into a written contract for the sale by defendants to plaintiffs of a stock of goods and furniture in a store at Easonville. The parties each deposited three hundred and fifty dollars, plaintiffs in cash, and defendants in a check, as a forfeit on failure to perform the contract. The goods were destroyed by fire during the night of March 10, 1888. Defendants having obtained possession, after the fire, of the money deposited by plaintiffs, the latter bring the action to recover this amount, and also the amount of the check. The main question presented is, upon whom falls the loss occasioned by the destruction of the goods.

In order to ascertain the price to be paid by plaintiffs, the goods were to be inventoried, and marked at first cost, except certain classes which were to be marked at their cost delivered in the store, and ten per cent. deducted from the aggregate amount. Plaintiffs were to pay one half of the price in cash, but in no event less than one thousand dollars, and for the balance give two notes of equal amounts payable, respectively, on the fifteenth day of October and the first day of November, 1888, with interest. The payment was to be made, and the notes given, at the furthest by the fifteenth of March of the same year. It was expressly stipulated, that the goods should be delivered to the plaintiffs after the cash payment was made, and notes given as agreed, and that the title should remain in defendants until payment was made and

[Stone & Gambrell v. Waite & Co.]

notes given. There is no contention as to the construction and effect of the written contract. It is not controverted, as the price of the goods had not been definitely ascertained, and payment had not been made and notes given, that by the terms of the written contract the possession and title resided in defendants at the time of the fire, and that the loss falls on them, unless by the modification of the contract the goods were delivered, and the property vested in defendants, before they were burned.

Defendants contend, that the contract was so modified by subsequent parol agreement; and this contention raises the real controverted issue. The parties substantially concur in their testimony, that at or soon after they began to take an inventory of the goods, there was an understanding that plaintiffs should sell to customers the goods inventoried, the object being to prevent closing the doors of the store, while ascertaining the price to be paid. As to the force and effect of the understanding, their evidence materially varies. Plaintiffs' testimony tends to show, that the understanding was made merely for the convenience of customers, and not with the intent to change or modify the contract. D. W. Waite, one of the defendants, after testifying that they decided the doors should not be closed, and that a sale of goods to customers should go on, defendants selling ahead, and plaintiffs selling behind the invoice, states: "We then agreed that the goods behind the invoice should belong to the plaintiffs, to do with the same as they pleased, and the goods ahead of the invoice should belong to D. W. Waite & Co., to do with them as they pleased." The parties proceeded under this arrangement, until the completion of the inventory on the afternoon of the day preceding the night on which the fire occurred, but left the store without ascertaining definitely the price to be paid, owing to a difference in the addition of the marked prices. On leaving the store, one of the plaintiffs took the key, and locked the door, at the instance of one of the defendants, carrying it home with him.

In this state of the evidence, the court properly charged the jury, that if the arrangement or agreement, when about to begin invoicing the stock, was, that defendants should sell ahead of the invoice to customers, and plaintiffs should sell behind the invoice, and that such arrangement was made for the accommodation of customers, and to avoid closing the store, without intention to change the written contract except as to articles so sold, such arrangement or agreement did

[Stone & Gambrell v. Waite & Co.]

not change or affect the written contract in respect to that part of the stock of goods destroyed by the fire. After having thus charged the jury, the court further instructed them, that if the terms of the contract were changed by an agreement, by which the goods, on being invoiced, were to belong to the plaintiffs, to do with as they pleased, and that the entire stock, with the prices, were put on the inventory, and turned over to plaintiffs, and they received and took charge of the goods, to do with as they pleased, and also took charge of the key before the goods were burned, their destruction was plaintiffs' loss, and they could not recover, notwithstanding the freight on certain classes of goods had not been ascertained and added, and the ten per cent. deducted, and plaintiffs had not made the cash payment, nor given the notes.

The charge was evidently intended to declare the law on the phase of the facts which the evidence of defendants tends to establish. Assuming, therefore, that the modifying agreement was in the language of the witness Waite, above quoted, the correctness of the charge depends on what was meant and intended by the phrase, *were to belong to plaintiffs, to do with as they pleased*, as employed. If the parties meant and intended that not only the possession and use, but also the property in the goods, should unconditionally vest in plaintiffs—in other words, 'that after the completion of the inventory, and taking charge of the key, plaintiffs had the right to remove and retain the entire stock as against defendants' retention of title, notwithstanding they failed to perform the agreed conditions—the loss of the goods certainly fell on plaintiffs. But a construction which attributes to the agreement such extent, effect and legal consequences, works a radical change, even the abrogation of most material terms of the written executory contract, tantamount to its rescission and to making a new contract; for, if the property in each article of the goods vested in plaintiffs on being invoiced, and those not invoiced belonged to defendants, to do with as they pleased, without regard to the stipulations of the written contract, except as to the price and mode of ascertaining it, then there was no binding agreement to sell, and no sale of the latter class of goods, unless and until they were inventoried by the mutual consent of the parties.

The agreement, however, is reasonably susceptible of another and qualified meaning. In view of the circumstances —of the absence of proof of an agreement to waive the retention of title as security for the performance of the condi-

tions, except as it may be inferred from the language used, and of any agreement whatever other than the one made when the parties began to invoice the goods, and that the object of the parties was to avoid closing the store, and to continue sales to customers—it may be reasonably inferred that an agreement, to the effect that the inventoried goods should belong to plaintiffs, and the uninventoried goods to defendants, to do with as they respectively pleased, was intended to accomplish the object the parties had in view, and to have reference only to the matter of selling goods to customers in the regular course of trade, and was not intended to otherwise alter, rescind or annul the express stipulations of the written contract. As the agreement is susceptible of two constructions, the charge is erroneous, inasmuch as it assumes that it means and implies that the property to each article of the goods, when inventoried, and to the entire stock on completion of the inventory, vested in plaintiffs, with the absolute title of disposition, relieved of the lien of defendants for the payment of the price—that there was either a waiver of the stipulation as to the retention of title, or that its retention was, under the agreement, inoperative.

"Where the buyer by the contract is bound to do anything as a condition, either precedent or concurrent, on which the passing of the property depends, the property will not pass until the condition is fulfilled, though the goods may have been delivered into the possession of the buyer."—1 Benj. on Sales, § 366; *Sumner v. Woods*, 67 Ala. 139. In *Rogers v. Whitehouse*, 71 Me. 222, it was ruled that, where goods are bought by a retail dealer upon condition that the property shall not vest in him until paid for, an understanding that they should go into his store, and be sold by him in the regular course of trade, does not operate to pass the title as between the parties. The same ruling was made in *Burbank v. Crocker*, 7 Gray, 158. An understanding, or agreement, entered into when the parties commenced to take the inventory in order to ascertain the price, and on the same day the written contract was signed, that the inventoried goods should belong to plaintiffs, to do with as they pleased, in respect to the matter of selling to customers, does not imply a waiver of the stipulation as to the retention of title until the goods are paid for. Such an agreement, and a delivery thereunder, are consistent with an existing and express stipulation for retention of title, until the conditions agreed on, as precedent or concurrent with the passing of title, are per-

formed.—*Fairbanks v. Eureka Co.*, 67 Ala. 109.    The modifying agreement being oral, the meaning and intent of the parties should be left to the jury, with proper instructions, accordingly as they may find.

The court further substantially instructed the jury, that if the inventory was completed on the afternoon of the day before the fire, and plaintiffs, in pursuance of an agreement made with defendants about the time the invoicing was begun, took possession and control of the stock, for the purpose and with the intention of selling to customers in the course of trade for their benefit, and to use the goods and proceeds as they pleased, with the consent of defendants; and the goods, while thus in the possession, control and custody of plaintiffs, were destroyed by fire; they are not entitled to recover, although it was not the intention of defendants, in thus parting with the possession and control of the goods, to part with the title thereto.    Generally, the law fixes the loss on the party in whom the title resides. *Jones v. Brewer*, 79 Ala. 545; *Grant v. United States*, 7 Wall. 331.    When personal chattels are sold, on condition that the seller retains title until paid for, and possession is delivered, the buyer may sell his interest, subject to this right of the vendor.    The title does not vest in the buyer, until performance of the condition, and until it does pass, the risk of loss remains in the seller.—1 Benj. on Sales, §§ 452-427.    No circumstances appear which take this case out of the general rule.

Though no question is presented relating to the right of plaintiffs to recover the amount of the check deposited by defendants, yet, as it is involved, and will necessarily arise on another trial, we may remark that, it being apparent from the nature and subject-matter of the contract that the parties contracted on the basis of the continued existence of the goods, their accidental destruction by fire, without fault on the part of defendants, excuses them from performance of the contract.—2 Benj on Sales, § 826; *Dexter v. Norton*, 47 N. Y. 62.

The evidence that the insurance company deducted ten per cent. from the valuation of the stock was relevant, in connection with evidence tending to show that plaintiffs consented to the collection of the insurance money, for the purpose of showing the amount collected.

Reversed and remanded.

STONE, C. J. not sitting.