(76 South. 944)

## ALEXANDER v. MOBILE AUTO CO.
### (1 Div. 3.)

(Supreme Court of Alabama.　Nov. 15, 1917.)

1. BAILMENT ⊜⊃18(3)—BLACKSMITH'S LIEN—CONTINUOUS POSSESSION.

There can be no common-law blacksmith's lien without continuous possession of·the property repaired.

2. BAILMENT ⊜⊃18(4) — LIEN — RELEASE OF PROPERTY—RIGHT TO REVOKE.

The common-law right to retain the property until the lien is discharged is waived or lost by a release of the property without enforcement, and the artisan or machinist cannot thereafter retake the property and hold it under common-law right.

3. WITNESSES ⊜⊃268(1) — CROSS-EXAMINATION—SCOPE.

In an action to recover the balance of the purchase price of an automobile sold under conditional sale, plaintiff claiming that he had not lost his right by taking possession after default, as such possession was by virtue of his right to retain the car for repairs made at defendant's request, the court erred in refusing cross-examination of plaintiff's agent to the effect that he did not know whether the repairs were made on the car in question, as the car in question could not be held for repairs made on another.

4. LIENS ⊜⊃1 — EXTENT OF INTEREST IN PROPERTY.

As a general rule one can create a lien on property to the extent of his interest therein.

5. SALES ⊜⊃455—CONDITIONAL SALES—RETENTION OF PROPERTY AS SECURITY.

The reservation of title in the seller is incompatible with the idea of security for debt.

6. SALES ⊜⊃479(1)—CONDITIONAL SALE—REPOSSESSION OF PROPERTY.

A vendor under a conditional sale who asserts his right to repossess the property abandons his right to sue for the purchase price, as the assertion of either right is an abandonment of the other.

7. SALES ⊜⊃479(1)—CONDITIONAL SALES—RETENTION OF PROPERTY.

If the act of the seller in taking possession of an automobile was equivocal, it must be referred to his superior title by virtue of the conditional sale, and not to his right to a lien for repairs, as the lesser estate will be controlled by the greater whenever the two are owned by the same person.

8. BAILMENT ⊜⊃18(2) — LIEN — CONDITIONAL SALES—RIGHT OF SELLER.

A conditional bill of sale by the seller prevents the attaching of a materialman's lien in his favor during· the time title is retained under the conditional bill of sale.

9. ELECTION OF REMEDIES ⊜⊃14—REVOCATION OF ELECTION.

An election made between inconsistent rights cannot be revoked.

10. SALES ⊜⊃479(1) — CONDITIONAL SALES — SUIT FOR PURCHASE PRICE—AFTER TAKING POSSESSION.

Plaintiff having reserved title to an automobile and having elected to repossess the same, he could not thereafter subject the buyer to liability for the unpaid purchase price on the ground that his possession was under a lien for repairs.

Appeal from Law and Equity Court, Mobile County; Saffold Berney, Judge.

Assumpsit by the Mobile Auto Company against John Alexander.　Judgment for plaintiff, and defendant appeals.　Transferred from the Court of Appeals under section 6,

Act April 18, 1911, p. 449.　Reversed and remanded.

Replication No. 1, as amended, is as follows:

That on or about August 1, 1915, which time was after there had been a default in one or more of·the notes sued upon, and which were given to secure the bill of sale set forth in plaintiff's complaint, plaintiff took possession of the automobile delivered to defendant under said bill of sale, and refused upon request to surrender same to defendant.　But plaintiff says prior to the taking possession of said automobile he was engaged in the business of furnishing blacksmithing, woodworking, and other mechanical labor and material for the repairing of automobiles, and had contributed at defendant's request such labor and material for re-·pairing defendant's automobile, for the value of which labor and material, to wit, $413.12, defendant refused, and still refuses, to pay. Wherefore plaintiff says that he became entitled to a lien on said automobile for, said labor and material, and was entitled to hold possession of said automobile by reason of said lien. Plaintiff said that his taking possession of said automobile and his refusal to surrender same under the circumstances above set out did not operate as an election by plaintiff to exercise option No. 1 of said bill of sale, or preclude plaintiff from here suing for the balance due on the purchase price.

The demurrers raise the questions discussed in the opinion.

Hugh M. Caffey, Jr., of Mobile, for appellant.　Brooks & Crawford, of Mobile, for appellee.

THOMAS, J.　This case presents the unusual question, whether the owner of personal property which he has contracted to sell can have a mechanic's lien thereon for repairs made at the request of the purchasing party in possession of the property.

The facts set out in the pleading are that appellee, Mobile Auto Company, contracted to sell appellant an automobile for $600; that most of the agreed purchase price was to be paid in 36 weekly installments.　The contract in writing executed by the parties on March 6, 1915, contained the following stipulations:

"It is expressly agreed that the delivery of possession shall vest no title to said property in the party of the second part, but the full, complete, and absolute legal title shall be and remain in said party of the first part, their successors and assigns, until the whole of said purchase money be paid, and when the sum is fully paid, then the property to become the property of the said party of the second part.

"Upon default of the party of the second part, and at any time thereafter so long as said default has not been corrected, the party of the first part may at its option either: (1) Repossess said property without notice or demand of any kind, in which event all payments made of the second part shall be considered rent, and shall be kept by the party of the first part, and all rights of the party of the second part hereunder shall terminate; or (2) sue for such amounts as may be due hereunder at the time of suit; or (3) treat all amounts to be paid hereunder as due and payable and sue for all such amounts; or (4) permit said default to con-

tinue for such period as the party of the first part may elect."

It was thus agreed that the legal title to the car should remain in the auto company until the whole of the purchase money should be paid, and then only should vest in Alexander, and that on "any default" the auto company might exercise any one of the aforesaid options. The evidence showed default in the weekly payments due on the purchase price after about $200 had been paid.

The plaintiff company's agent, or alter ego, who sold the car, and had the authority, for the company, to exercise the option secured to the owner under the contract, testified that he took the automobile back about September, 1915, and still had it in possession at the date of the trial, October 19, 1916. On cross-examination his further explanation of that possession was:

"At the time I took it back default had been made in the payment of several of the notes— in the May, June, July, and August notes, I am sure. Some of the notes that were past due had been charged back to his open account, and some were left to stand open as bills receivable. This was because of a change in bookkeepers. At the time I took this automobile back there had been default in the payment of some of the notes I now sue upon, and I took the automobile back before the beginning of this suit. I had the option upon default in the payment of any note to take the automobile back and charge all payments made on the notes as rent for the automobile. After I took the automobile the defendant came around for it, and I refused to let him have it."

On redirect examination witness' further explanation of that possession was:

"I refused to let defendant have the automobile in September or October, 1915, after the last work we did on it. I had the automobile in my possession. It was in the building. * * *"

The record shows the following other interrogatories to and answers of this witness on redirect examination:

"Q. How did you happen to get possession of that automobile? A. He put it in the garage for repairs, and I asked the bookkeeper how much was due on it and he told me— Q. You say he left it there for repairs? * * * A. Yes, sir. * * * Q. Did you hold the car for the last repairs which were made, Mr. Hartwell? * * * A. Yes, sir. * * * Q. Has the value of the last repairs been paid to you? * * * A. No, sir. * * * Q. Did you have any conversation with the defendant at the time you held the car after the repairs were made? * * * A. Yes. Q. Did you tell the defendant why you were holding it? * * * A. I told him that the car was getting further in debt all the time, and I wanted the repair bill paid, and he said he couldn't pay it, that he was not making money, and I told him I would hold the automobile for the repair bill."

On recross-examination the witness testified:

"At the time defendant brought this automobile around for repairs I knew it was the same machine I had sold him under the conditional bill of sale. At the time I sold him the automobile for which these notes sued on were given I also sold him another car but by a separate bill of sale, and not under the same conditions."

It will be observed that the effect of this explanation was no more than that the car was left at the garage by Alexander "for repairs," that witness inquired of the bookkeeper, how much was due on it, and was told by the latter, and that he held the car for the "last repairs" which were made thereon by that company.

The fair import of this testimony, under the replication, is not that when the car was last placed in the garage for repairs the repairs were made, and the car was then held for charges, but that when it was left there for repairs it was held for the charges on account of the repairs last theretofore made thereon. That other repairs had been made on the car is to be inferred from the concluding statement of the witness:

"I told him [defendant] that the car was getting further in debt all the time, and I wanted the repair bill paid, and he said he couldn't pay it, that he was not making money, and I told him that I would hold the automobile for the repair bill."

Under the plaintiff's replication, if it be conceded that it was correctly pleaded to the effect that prior to taking possession of the automobile he was engaged in the business of blacksmithing and furnishing mechanical labor and material for the repairing of automobiles, and had contributed at defendant's request such labor and material for repairing defendant's automobile, for the value of which labor and material, to wit, $413.12, the defendant refused and still refuses to pay, etc., and that plaintiff became entitled to a lien on said automobile for said labor and material, and was entitled to hold possession of said automobile by reason of the lien, to this extent the burden was cast on the plaintiff. This burden the plaintiff has failed to meet, if the blacksmith's lien averred be that authorized under the statute. Code of 1907, §§ 4785–4789.

Appellee insists, however, that it had the lien given by the common law to a blacksmith authorizing the retention in his possession of the vehicle, machine, or article on which he has bestowed labor and furnished material until the reasonable charges therefor are paid. 2 Kent's Com. 635; J. C. Walden Auto Co. v. Mixon, 196 Ala. 346, 71 South. 694. As to this lien, the testimony wholly fails to show the nature of the repairs made or of the material furnished, or their reasonable value, and fails to show when they were completed, whether at some former time or at the time the automobile last came into, and was detained at, the garage by the artisan or mechanic for such repairs. This proof was necessary under appellee's insistence and pleading.

[1] There can be no common-law blacksmith's lien without a continuous possession of the property repaired. It rests on this immemorial custom thought necessary to protect mechanics or artisans engaged in a public calling of the kind involving frequent dealings (and generally small amounts) with strangers, impecunious persons, or travelers, touching

whose credit the artisan may know nothing and whom he may not see again.

[2] This common-law right to retain the property until the lien is discharged is waived or lost by a release of the property without enforcement. This rule does not authorize the artisan or machinist to thereafter retake the property and hold it under common-law right. Such a course was not sanctioned by the immemorial custom now relied on by plaintiff, and would easily invite breaches of the peace. Walden Auto Co. v. Mixon, 196 Ala. 346, 71 South. 694; Voss & Co. v. Robertson & Co., 46 Ala. 483; Mobile B. & L. Ass'n v. Robertson, 65 Ala. 382, 390; Lickbarron v. Mason, 6 East, 21, 27; White v. Smith, 44 N. J. Law, 105, 43 Am. Rep. 347; Mathias v. Sellers, 86 Pa. 486, 27 Am. Rep. 723; 25 Cyc. 675 (4); 4 Mod. Am. Law, p. 124.

The defendant's cross-examination of witness Hartwell was shown to be relevant by the statement of counsel to the court:

"I expect to show that Mr. Hartwell does not know whether the repairs were made on this car or not; that some of the items were for old repairs and some new, and some for one car, and some for the other car. That is what I want to show."

[3] The court committed error in sustaining plaintiff's objection to defendant's question as to the auto company's having made repairs on defendant's second car sold to him by that company. This witness had stated that the company sold to the defendant such second car at the time the car in question was contracted for, but that said second car was conveyed to the defendant "by a separate bill of sale, and not under the same conditions." The character of the possession of the car by the auto company was a material inquiry under the provisions of the contract to sell the car in question; and the car could not be held for repair bills incurred in the rehabilitation of the other or second car. And the indefinite statement of the company's claim for repairs warranted such cross-examination.

[4] As a general rule, one can create a lien on property to the extent of his interest therein. He need not be the sole or absolute owner; if he has an equitable title, or some legal interest, he may create a lien upon such interest as he has. This lien will not ordinarily affect the rights of others or of other incumbrancers.

The Georgia court has declared (Walker v. Burt, 57 Ga. 20) that a conditional purchaser, so long as the condition on which the title is to pass has not been performed, cannot create a lien on the property so as to impair the title of the owner. Thus the retained title is treated as a lien. 1 Jones on Liens, p. 9, § 9.

[5] In this state a reservation of title is more than a lien in the holder; it is the title reserved to the seller, and not to vest in the purchasing party to the contract until the purchase price is fully paid. With such a provision the idea of a security for debt is "utterly incompatible." Haynie v. Robertson, 58 Ala. 37; Dowdell v. Empire Co., 84 Ala.

316, 4 South. 31; Warren v. Liddell, 110 Ala. 232, 20 South. 89. Such was the holding also in Bishop v. Minderhout, 128 Ala. 162, 29 South. 11, 52 L. R. A. 395, 86 Am. St. Rep. 134, from which we quote this illustration of the principle:

"When personal property is sold and delivered to a vendee under an agreement that the title thereto is to remain in the vendor until payment of the purchase price, the loss or destruction of the property while in possession of the vendee, before payment, without his fault, relieves him from the obligation to pay the purchase price thereof, and such loss falls upon the vendor."

And this last-cited case follows the rule declared in Stone v. Waite, 88 Ala. 599, 7 South. 117; Jones v. Brewer, 79 Ala. 545; Grant v. United States, 7 Wall. 331, 19 L. Ed. 194. See, also, the cases of Goodgame v. Sanders, 140 Ala. 247, 37 South. 200; Weinstein v. Freyer, 93 Ala. 257, 9 South. 285, 12 L. R. A. 700; Adams v. I. B. L. Ass'n, 119 Ala. 97, 24 South. 857; Thomason v. Lewis, 103 Ala. 426, 15 South. 830; Montgomery Iron Works v. Smith, 98 Ala. 644, 13 South. 525; Code 1907, §§ 3393–3395, 3789, 3791, relating to the right of parties to a contract to stipulate for retention of title in the seller until full payment of the purchase price.

[6] A vendor under a conditional sale, who asserts his right to repossess the property, by such action abandons his right to sue for the purchase price. Montgomery Iron Works v. Smith, supra; Tanner v. Hall, 89 Ala. 628, 7 South. 187; Sanders v. Newton, 140 Ala. 335, 37 South. 340, 1 Ann. Cas. 267; Davis v. Millings, 141 Ala. 378, 37 South. 737; Benj. on Sales, Am. Notes (7th Ed.) p. 301; 35 Cyc. 674, 705. The assertion of either right is the abandonment of the other. Hickman v. Richburg, 122 Ala. 638, 26 South. 136; Tanner v. Hall, supra; Loomis v. Bragg, 50 Conn. 228, 47 Am. Rep. 638; Heath v. Randall, 4 Cush. (Mass.) 195.

[7] If the act of Hartwell, for his company, in retaining the possession of the car, was equivocal, it must be referred to the exercise of his right under the superior title, rather than to the exercise of a right under a common-law lien if such he had; for the lesser estate will be controlled by the greater whenever the two estates are owned by the same person. Fouche v. Swain, 80 Ala. 151. He could not take and hold possession of the car under such antagonistic claims as that by virtue of ownership and that by virtue of a common-law mechanic's lien. If the blacksmith's lien did attach, it would be an injustice, under the legal form of the contract, to forfeit to the owner of the car, as rental, all sums paid on the purchase price, and allow such contracting owner to repossess and hold the car under the common-law lien, and at the same time to permit a recovery for the balance of the unpaid purchase price under the contract. Forthman v. Deters, 206 Ill. 159, 69 N. E. 97, 99 Am. St. Rep. 151; Pom. Eq. Jur. § 794.

The rule that retention of title is inconsistent with a lien is affirmed in Bierce v. Hutchins, 205 U. S. 340, 347, 27 Sup. Ct. 524, 525 (51 L. Ed. 828), where the holding is that a conditional vendor does not make an election to treat the property as the vendee's by merely instituting suit to enforce a mechanic's lien, when the suit is dismissed without anything having been done under it. The court says:

"It is quite true, as we have said, that the assertion of a lien is inconsistent with the assertion of a title (Van Winkle v. Crowell, 146 U. S. 42 [13 Sup. Ct. 18, 36 L. Ed. 880]), and therefore, if a lien has been established by judgment or decree, the title would be gone by force of an adjudication inconsistent with its continuance. *But the assertion of a lien by one who has title, so long as it is only an assertion, and nothing more, is merely a mistake.* [Italics ours.] It does not purport to be a choice, and it cannot be one, because the party has no right to choose. The claim in the lien suit, as was said in a recent case, was not an election, but an hypothesis. The fact that a party, through mistake, attempts to exercise a right to which he is not entitled, does not prevent his afterwards exercising one which he had and still has unless barred by the previous attempt."

Such, however, would not have been the decision if the suit had not been dismissed, but some right had been disturbed thereby.

Chief Justice McClellan anticipated the instant case, in Lehman, Durr & Co. v. Van Winkle & Co., 92 Ala. 443, 446, 8 South. 870, in the remark that:

" * * * The retention of title * * * [is] inconsistent with the theory of a lien, since it is not conceivable that one may have a lien upon property which absolutely belongs to him."

[8] This statement of the court in reference to the impossibility of a conditional vendor's having a lien on his own property is conclusive of the question before us. It will be noted that in that case Van Winkle & Co. had sold certain machinery to Belser & Parker to be erected on the premises of the latter, and that there was at the time of the sale no reservation of title or other security. The vendor, however, had the statutory right of protection by filing and enforcing a mechanic's lien on said property within the time allowed by law. A short time after the property was sold (December 4, 1885), and before the time for filing or enforcing a mechanic's lien had expired, Belser and Parker mortgaged the property to the defendant. After this mortgage (December 11, 1885), but before the expiration of the time for filing a mechanic's lien, instead of perfecting such lien, Van Winkle & Co. entered into a new contract with Belser & Parker, whereby the vendor attempted to secure the sale by reserving title under a conditional bill of sale, extending the time of payment of one or more of the notes for the purchase money beyond the time for the enforcement of a mechanic's lien. Not until after the time for filing a mechanic's lien had expired, and after Van Winkle & Co. had brought assumpsit on the debt (in the spring of 1886), and thereby waived such title as was reserved, did it discover the existence of the intervening mortgage to defendant, and thereupon file a bill in equity seeking to set aside the mortgage.

After a thorough discussion of complainant's status as a lienholder, as holder of legal title, and as a simple contract creditor, that decision determined that under the facts and circumstances: (1) Van Winkle & Co. were simple contract creditors; (2) upon the execution of the contract of sale they were inchoate lienholders, and until the novated contract was executed the defendant's mortgage was subject to this inchoate lien; (3) that the new bill of sale reserving title to Van Winkle & Co. destroyed the inchoate mechanic's lien, since the reservation of title is inconsistent with the existence of a lien.

It will be seen, then, that in arriving at the status of Van Winkle & Co. it was necessary for the court to decide whether one who holds title to property under a conditional bill of sale can at the same time have an inchoate mechanic's lien upon the same property. If Van Winkle & Co. could do so, and the novated contract did not destroy the inchoate lien, then the plaintiff's subsequent suit in assumpsit to enforce the lien could not have had the effect to waive the terms of the conditional sale. If both rights could exist at the same time on the same property, then it must follow that both could be perfected or were effective. Just as the suit in assumpsit waived the terms of the conditional bill of sale because inconsistent therewith, so did the taking of the conditional bill of sale prevent the attaching of a materialman's lien during the time title was retained by that conditional bill of sale. Or, to state it differently, just as the reservation of title under the new bill of sale was an abandonment of the mechanic's lien, so would the taking of a new bill of sale reserving title, by one who has an inchoate mechanic's lien, be an abandonment of that lien. This was, in effect, the decision in the Van Winkle Case, grounded, as it was, on the incompatibility of the legal title to, and a lien upon, the same property, residing in the same person at the same time. Small v. Robinson, 69 Me. 425, 31 Am. Rep. 299; Hollingsworth v. Dow, 19 Pick. (Mass.) 228; Lowe v. Woods, 100 Cal. 408, 34 Pac. 959, 38 Am. St. Rep. 301.

[9] An election made between inconsistent rights cannot be revoked. Zavelo v. Cohen Bros., 156 Ala. 517, 47 South. 292; Fuller v. Eames, 108 Ala. 464, 19 South. 366; Hickman v. Richburg, supra; Ex parte Logan, 185 Ala. 525, 531, 64 South. 570, 51 L. R. A. (N. S.) 1068, Ann. Cas. 1916C, 405.

[10] Plaintiff, having reserved the title and elected to repossess the machine, could not thereafter subject Alexander to liability for the unpaid purchase price. As Alexander may not recover the several sums paid by him to plaintiff under the contract, after his default in subsequent payments and after the repossession of the property by its owner

(Davis v. Millings, supra; Benj. on Sales [7th Ed.] pp. 298, 300; 35 Cyc. 705), by the same token the plaintiff may not treat that contract as terminated and then recover the purchase price of the machine.

It follows from what we have said that the demurrer to replication No. 1, as last amended, should have been sustained.

The judgment of the law and equity court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.