154 So. 97

## EQUITABLE LIFE ASSUR. SOC. v. ROBERTS.

### 8 Div. 515.

Supreme Court of Alabama.

March 15, 1934.

Rehearing Denied April 26, 1934.

See, also, 226 Ala. 8, 145 So. 157.

Howze & Brown, of Birmingham, for appellant.

Harris Burns, of Birmingham, and Bradshaw & Barnett, of Florence, for appellee.

**PER CURIAM.**

James C. Roberts met his death in an automobile accident. The beneficiary, named in the life insurance policy issued to said Roberts by defendant company, seeks to recover the additional indemnity provided therein for accidental death. The defense rests upon the theory there was a forfeiture of the policy as to this additional indemnity, for nonpayment of premiums.

As to the semiannual premium due September 11, 1930, within the grace period provided in the policy, insured forwarded $100, and asked for extension for the balance due of $114, which was duly granted to January 11, 1931, with the agreement that, if not paid on that date, the policy would lapse. Roberts died on January 17, 1931, without having made the payment, and the policy therefore lapsed unless matters presently to be considered sufficed to prevent its forfeiture.

In April, 1929, insured borrowed, on the sole security of the policy, the sum of $510, and the loan was never repaid. On February 15, 1930, insured received from defendant notice of a cash dividend apportioned to his policy, payable March 11, 1930. As to this cash dividend, insured had certain options, to receive the cash, apply it to payment of premium, purchase of paid-up insurance payable in a single sum, or leave with the company to accumulate at 3 per cent., compounded annually, interest. If, within a given period after notice, insured failed to elect one of these options, the dividend was to be applied to the purchase of the additional paid up insurance. On April 29, 1930, insured by letter, directed that the dividend of $197 be applied on his loan. The letter, though received, was misfiled and overlooked, or at least the insured's direction was not complied with; but, on the contrary, the dividend was applied according to the automatic alternative of the policy, to the purchase of additional insurance. Insured died without ever having any information that his directions as to the application of the dividend had been disregarded. No revocation of these directions appears in the proof, and, on former appeal (Equitable Life Assurance Society v. Roberts, 226 Ala. 8, 145 So. 157), where a more detailed statement of essential facts appears, it was held that the averment of revocation in replication 12, as framed, was material, and the cause reversed for the failure of proof in that regard.

We there approved, however, the principle (recognized by the weight of authority) that, where the insurer, at the time of default in the payment of a premium, has in his hands dividends duly declared, sufficient to meet such premium or unpaid portion thereof, and which have not been theretofore otherwise applied in accordance with the terms of the policy, or by mutual consent, a legal obligation is on the insurer to apply such dividends to the payment of the premium in order to avoid a forfeiture of the policy.

The pleadings on this trial were reframed by plaintiff so as to make applicable this principle. There were pleas, replications, rejoinders, and rulings on demurrers thereto. But the facts are undisputed and, indeed, there is here presented an agreed case under section 6095, Code, as amended by General Acts 1931, page 409; and it is agreed by all that the whole case rests upon the single proposition as to whether or not the dividend of $197 was available to be applied, and as a matter of law should be applied, to the payment of the balance of the premium due to be paid January

11, 1931. There is therefore no occasion for any detail treatment of the several rulings on pleadings.

The dividend of $197 was the property of the insured. He had directed, in the exercise of an option provided for by the policy, that these funds be used in a certain manner— credited on his loan. His direction was disregarded, and his money used for another and wholly different purpose—purchase of additional insurance. The money was in defendant's hands, and diverted for a purpose not authorized. Defendant, prior to the direction given by insured, had money, which in equity and good conscience belonged to the insured. After such direction was given, the money was thereby effectively appropriated.

Insured had no notice of the application of his funds to the purchase of additional insurance, and they were therefore not applied by mutual consent. Nor were they applied pursuant to the directions of the insured, as authorized by the terms of the policy. On the contrary, the money was appropriated to an unauthorized purpose. Nor was there occasion for the application of the automatic alternative application in the policy, as insured had made an election, and such provision could only come into play in the absence of an expression of choice by the insured.

The situation is the same in legal effect as if insured had remitted that amount of money to the company, and directed its application to a debt for borrowed money. If he had done so and the check or cash was received from insured with that instruction, it would have operated as a payment on that debt, regardless of what sort of book entries the company may have made. That is the legal consequence of retaining the money. To avoid that result, it must have been returned to the debtor. Petty v. Dill, 53 Ala. 641; Levystein v. Whitman, 59 Ala. 345; McCurdy v. Middleton, 82 Ala. 131, 2 So. 721; Lynn v. Bean, 141 Ala. 236, 37 So. 515; Brown v. Scheuer, Wise & Co., 210 Ala. 47, 97 So. 50; Dewberry v. Bank, 227 Ala. 484, 150 So. 463 (15).

When the debtor makes such a direction, the retention of the money finally fixes its status as thus directed, so that neither can otherwise apply it without the consent of the other. Johnson v. Thomas, 77 Ala. 367; Redd Bros. v. Todd, 209 Ala. 56 (4), 95 So. 276; Lynn v. Bean, supra.

In order to sustain the right of this plaintiff, we must hold that, though the insured directed its application to his note for borrowed money, and though the company in fact applied it to purchase paid-up insurance under the automatic provision, it must be treated as not applied by either of them, and, therefore, should be treated as credited by law upon the premium. This cannot be done if either the insured or the company made an effectual application of it to some other purpose.

The proper treatment of the question may be either upon the basis of an application of it as a payment or as an election of optional rights. The right of election when it exists in a person is independent of the course pursued by some other, though he may be interested in it, but not having the right of veto. If one has a right to elect, it is inconsistent to say that such right is dependent upon what some other person may do or fail to do. Collins v. Whigham, 58 Ala. 438. Any "decisive act of a party with knowledge of his rights and of the facts indicating an intent to pursue one remedy rather than the other determines his election." 20 C. J. 19.

In State Life Ins. Co. v. Finney, 216 Ala. 562, 114 So. 132, 134, it is said that "all that was required to constitute an election in accordance with the contract was that the insured give the company notice." The question there, as here, was to determine the effect of that notice upon the continued life of the policy to the death of insured. When the notice was given, the rights of the parties were determined. Their status was then fixed. Subsequent events not amounting to mutual understanding are immaterial.

Here insured knew his rights and the facts, and indicated his choice by notice to the company, which was duly received. The company thereafter had no further power to dispose of the credit; neither did any legal principle enforceable by the court control it to a different result. An election once made is final and irrevocable. Collins v. Whigham, supra; Alexander v. Mobile Auto Co., 200 Ala. 586, 76 So. 944; Mobile Towing & Wrecking Co. v. Hartwell, 208 Ala. 420, 95 So. 191; Phillips v. Sipsey Coal Mining Co., 218 Ala. 296, 118 So. 513; 13 C. J. 630; 6 R. C. L. 860. The payment was complete, the right of election exercised, and the status of the parties fixed.

The judgment of the circuit court is reversed, and one here rendered denying the claim sued for.

Reversed and rendered.

ANDERSON, C. J., and BROWN, FOSTER, and KNIGHT, JJ., concur.

BROWN, Justice (specially concurring).

The contention of appellee, in short, is that, in as much as the insurer failed or refused to apply the dividend of $197, apportioned to his policy and payable March 11, 1930, in reduction of his loan, as he requested it to do, it had no authority to apply said dividend in purchasing additional insurance, as it did do, and therefore it must be held that it had money in its hands which ex aequo et bono belonged to the insured on January 11, 1931, when the time for the payment of the balance on the semiannual premium expired, and it was the duty of the insurer to apply said dividend, or so much thereof as was necessary, to the payment of said premium, and in the absence of such application by the insurer, the law will so apply it to prevent a forfeiture of the insured's rights under the policy.

The prevailing opinion heretofore promulgated reaffirms the doctrine approved on the former appeal, to the effect "that where the insurer, at the time of default in the payment of premium, has in his hands dividends duly declared, sufficient to meet such premium, or unpaid portion thereof, and which have not been theretofore otherwise applied *in accordance with the terms of the policy, or by mutual consent*, a legal obligation is on the insurer to apply such dividends to the payment of the premium in order to avoid a forfeiture of the policy." (Italics supplied.) Equitable Life Assur. Soc. of the United States v. Roberts, 226 Ala. 8, 12, 145 So. 157, 160.

The principle is denied application in the case at bar on the ground that the insured had the right, under the terms of the policy, without the consent of the insurer, to direct that the dividend apportioned to his policy be applied in reduction of his outstanding loan, and that he had elected to so apply it, long before the premium became due, the failure to pay which worked a forfeiture of the policy as to its "additional indemnity provisions."

While the writer is still in accord with the conclusion that the policy had lapsed as to the double indemnity feature for the nonpayment of the semiannual premium due September 11, 1930, the time for the payment of which was extended until January 11, 1931, on insured's application, after more mature consideration, I am not in accord with the holding that the insured had the right, without the consent of the insurer, to apply the accumulated dividend in abatement of the loan.

The provisions of the policy with respect to "*Annual Dividends*" are as follows: "The proportion of divisible surplus accruing upon this policy shall be ascertained annually. Beginning at the end of the second policy year, and on each anniversary thereafter such surplus as shall have been apportioned by the Society to this policy shall at the option of the insured (or assignee if any) be either—1, *Paid in Cash*; or, 2, Applied toward the payment of any premium if the remainder of the premium is duly paid; or, 3, *Applied to the purchase of paid-up Additional Insurance payable in a single sum at death of the insured* (without additional indemnity or total and permanent disability benefits); or, 4, Left to accumulate at 3% interest, compound annually. If a higher average annual rate is earned, this accumulation may be increased by an interest dividend as determined and apportioned by the Society. Such accumulations will be payable upon the maturity of this policy or on any anniversary of its register date. *Unless the insured (or assignee if any) shall elect one of the foregoing options within three months after the mailing by the Society of a written notice requiring such election, the dividend shall be applied to the purchase of paid-up Additional Insurance* (Option 3)." (Italics supplied.)

On February 15, 1930, the "Society" (insurer) mailed the insured notice that a dividend of $197 had been apportioned to his policy, payable March 11, 1930, the notice stating that: "Upon condition that premium payments for the current policy years shall have been completed, the above noted policy will, on the date stated, be entitled to the above dividend, which, at the option of the owner of the policy, may be applied under any one of the options shown on the reverse side of this notice. The owner of the policy is hereby required to *elect* the manner in which the said dividend shall be applied as *herein provided*, within three months after the date this notice was mailed, notifying the Society in writing of his election; *otherwise* the dividend will be applied to the purchase of paid-up additional insurance." (Italics supplied.) On the reverse side of the notice, there was a printed form of *election*, in which the options set forth in the policy, above stated, were repeated in the following order: "Additional Insurance," "Deposit," "Applied Toward Premium," "Cash. To receive the dividend in cash. Payments made under this option to be by check." Immediately opposite each of the stated options was a blank space for the "Owner's Signature" immediately under the following: "I elect the option opposite my signature," and following the several spaces, "Please date, sign and return to person designated to receive your premium."

544

This form was not used in responding to the notice, but on April 29, 1930, the insured, "James C. Roberts, wrote the defendant at its Birmingham office the following letter: 'In regard to my dividend of $197.00 coming to me on this policy as of date March 1, 1930, wish to say that I would like for you to credit this dividend on my loan against this policy.' * * * This letter was received by the defendant but was by oversight misfiled and overlooked, and the request as to the application of the dividend was never complied with, and at the expiration of the three months' period from the time James C. Roberts received said notice requiring him to elect as to the disposition of said dividend, the defendant used said dividend of $197.00 to purchase paid-up insurance in the amount of $398.00 under the automatic alternative set out in the policy."

It is too clear to permit of controversy, that the letter written by Roberts on April 29, 1930, was not an election to apply the dividend under any one of the several options written into the policy contract.

Neither of the said options provided for or authorized such application; therefore, the insured had the right to accede to the request and so apply the dividend, or it had the right to ignore or refuse the request. The dividend was but an indebtedness due from the insurer to the insured, a *chose in action*, which might be treated as a set-off against the insured's indebtedness arising from the loan, and, under the uniform holdings of this court, could only be applied in payment of the loan indebtedness by the mutual consent of the parties. Wharton v. King, 69 Ala. 365; McCurdy v. Middleton, 82 Ala. 131, 2 So. 721; Cotton v. Scott, 97 Ala. 447, 12 So. 65; Aultman & Co. v. Gamble, 88 Ala. 424, 7 So. 248; Smith v. Pitts, 167 Ala. 461, 52 So. 402; J. F. Morgan Paving Co. v. Carroll, 211 Ala. 121, 99 So. 640; Stovall v. Hamilton, 14 Ala. App. 484, 71 So. 63; 48 C. J. 585, § 1, page 588, § 2; 21 R. C. L. 45, §§ 42, 43.

The insured not having elected to apply the dividend in accordance with any one of the options expressed in the policy contract, in the absence of an agreement between the parties to otherwise apply it, the insurer was clearly within its right in applying it to the purchase of additional paid-up insurance, as provided by option 3. Therefore, there was no unpaid dividend in the hands of the insurer on September 11, 1930, or on January 11, 1931, and the principles of law stated on the first appeal, and reaffirmed on this appeal, are without application.

GARDNER, Justice (dissenting).

Reduced to the last analysis, the majority opinion rests upon the principle very generally recognized, that an election once made is final and irrevocable. Collins v. Whigham, 58 Ala. 438; Alexander v. Mobile Auto Co., 200 Ala. 586, 76 So. 944; Mobile Towing & Wrecking Co. v. Hartwell, 208 Ala. 420, 95 So. 191; Phillips v. Sipsey Coal Mining Co., 218 Ala. 296, 118 So. 513; 13 C. J. 630; 6 R. C. L. 860.

But, though the insured made an election, yet, for it to be conclusively binding, the election must become effective, as illustrated in Collins v. Whigham, supra, as well as by a consideration of the underlying principles governing elections (2 Williston on Contracts, § 683 et seq.), to the effect that "a choice made by election gives the one making it an advantage which he could not otherwise have had. Though he surrenders one right he gains or keeps by so doing another and inconsistent right"; and in section 685, the author further says: "The principle of election is an equitable one and unless the other party has been deceived or the situation changed it is inequitable to regard a choice as final unless the party having the right of election was aware, or should have been aware, of all material facts making one choice desirable or the reverse."

Here, the insured expressed his choice, gave his directions and remained ignorant of the fact that his request was disregarded. His election never became effective, and could not on any equitable principle be declared as forever binding and conclusive. So far as its effectiveness was concerned, his election was but a mere gesture. And all of this was through the fault of the defendant company, which must be charged with the knowledge of the election, and held accountable for its disregard. It does not lie with the defendant, therefore, to assert its own neglect in the establishment against the insured of an irrevocable election and the forfeiture of his policy. The money was in defendant's hands, and by it diverted to a purpose not authorized. Defendant therefore had money in its hands which in equity and good conscience belonged to the insured.

Defendant may have acted in entire good faith, and no wrongful intention involved, yet it nevertheless has, through its own negligent conduct, used the funds of the insured in an unauthorized manner, and in such manner to be held accountable for money had and received. 2 C. J. 720.

Thus analyzed, the defendant, therefore, under the agreed facts, must be held as a legal

consequence to have had in its hands on January 11, 1931, funds of the insured more than sufficient to meet the premium payable on that date, and was, by virtue of the principle recognized on the former appeal, under the legal duty to so apply it as to prevent a forfeiture.

I am persuaded the judgment rendered is correct, and, therefore, respectfully dissent.

THOMAS and BOULDIN, JJ., concur in the foregoing views.